In re HOLBROOK SHOE & LEATHER CO.

(District Court, D. Montana. December 5, 1908.)

No. 559.

**1.** BANKRUPTCY (§ 225*)—REFEREE—JURISDICTION.

Where a bankrupt's trustee filed a petition for a summary order directing a corporation claimed to be a mere agent of the bankrupt to surrender possession of property which the trustee claimed belonged to the bankrupt but which the corporation claimed in its own right, it was the duty of the referee to hear the testimony in order to determine whether the corporation's claim was real or merely colorable.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 225.*]

**2.** BANKRUPTCY (§ 288*)—ADVERSE CLAIMS TO PROPERTY—DETERMINATION.

Jurisdiction to determine claims to a bankrupt's property by bill in the nature of a plenary suit does not preclude litigation of the rights of the parties in the bankruptcy proceedings, where the trustee applies for an order requiring surrender of possession on the ground that the property held belongs to the bankrupt and is held without color of right.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*]

**3.** BANKRUPTCY (§ 225*) — CLAIMS TO PROPERTY—REFEREE'S JURISDICTION—EXTENT.

Where, on a claim of a bankrupt's trustee to possession of property in the possession of another, the referee finds that the latter's claim is in good faith and probably real, but of doubtful validity or of questionable faith, it should then be determined by a plenary suit: but if he finds that the claim is without any actual merit or legal foundation, he should regard the property as subject to the bankruptcy court's jurisdiction as property of the bankrupt, and require its surrender to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 225.*]

**4.** BANKRUPTCY (§ 303*)—FRAUDULENT CORPORATIONS—CLAIMS.

Evidence *held* to warrant a finding that defendant corporation was organized to take over the stock and property of the bankrupt, to hinder and defeat the creditors of the latter, and that property in defendant's possession, alleged to have been purchased from the bankrupt, was in fact its property, and subject to administration, in the bankruptcy proceedings, for the benefit of the bankrupt's creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

**5.** BANKRUPTCY (§ 308*)—CLAIMS—CREDITORS ENTITLED—FRAUDULENT ORGANIZATION OF CORPORATION.

Where D., who was a director in a bankrupt corporation, participated in organizing the P. Company, which was established to take over the bankrupt's business in order to defraud its creditors, and D. purchased certain stock in the P. Company for $1,200 in cash, and became a director thereof, he should be considered as a creditor of the bankrupt to the extent of such amount.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 308.*]

Binnard & Rodgers, for trustee.
Clayberg & Horsky and H. A. Frank, for Packard Shoe Co.
J. L. Wines, for bankrupt.

HUNT, District Judge.    Max Fried, trustee in bankruptcy of the Holbrook Shoe & Leather Company, bankrupt, on June 5, 1908, filed with the referee in bankruptcy at Butte a petition for a summary order directed to the Packard Shoe Company, as agent of the bankrupt, to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

surrender to him, as trustee, certain property within the possession of the Packard Shoe Company at Helena, Mont. Upon June 6th the trustee asked the referee for an order restraining the Packard Shoe Company from disposing of property in its possession. The allegations of this petition were, in substance, that the examination of the officers and directors of the bankrupt corporation had disclosed that the above-named bankrupt was the owner of more than eight-tenths of the subscribed capital stock of the Packard Shoe Company; that the Packard Shoe Company was a Montana corporation organized about August 29, 1907; that the directors of the Packard Shoe Company and of the bankrupt corporation were F. P. Holbrook, D. L. Dunn, and Henry Swanson; that since the adjudication in bankruptcy Dunn has possessed the stock of goods of the Packard Shoe Company, which said stock was valued at between $4,000 and $5,000; that about $1,000 in money was deposited in bank at Butte, and that some money was deposited in Helena; that the stock of goods and the money in possession of the Packard Shoe Company were held by said corporation as the agent of said bankrupt, and that the officers of the Packard Shoe Company refused to turn over the same; that the officers of the Packard Shoe Company have conspired to cheat, deprive, and defraud the bankrupt of its interest in the Packard Shoe Company; and that in violation of the rights of the bankrupt and of petitioner, as trustee, they had passed a resolution, dated May 11, 1908, whereby D. L. Dunn, president of the Packard Shoe Company, was authorized "to sell, transfer, mortgage, execute deed of assignment, or take such other action as in his good judgment he may consider for the best interests of the company, of its assets." Petitioner then alleged that, with intent to cheat and defraud the bankrupt and the trustee, on May 11th the officers of the Packard Shoe Company fraudulently amended article 8 of the by-laws of the said company, by resolution, changing the by-laws so as to require a written request and six months' notice for a meeting, whereas, before such change, the by-laws permitted a meeting to be called merely after written request. It was also alleged that the Packard Shoe Company was insolvent, and that each of its directors was insolvent.

An order to show cause was issued. An answer was filed by the Packard Shoe Company, D. L. Dunn, as its president, F. P. Holbrook, as its vice president and treasurer, Henry Swanson, as its secretary, and D. L. Dunn, F. P. Holbrook, and Henry Swanson, as individuals. They denied that the stock of goods and money in the possession of the Packard Shoe Company was the property and money of the Holbrook Shoe & Leather Company, or that the same were being held by the said Packard Company, or its officers, as the agent of the bankrupt. They denied all allegations of conspiracy and cheating. They admitted the passage of the resolution passed on May 11th by the board of directors of the Packard Company, but denied that it was passed with intent to cheat or defraud the bankrupt. They alleged that on the 22d of May, 1908, and prior to the filing of the petition for a restraining order, a meeting of the directors of the Packard Shoe Company was held, and the resolution referred to was recalled and rescinded. They denied that they were selling or about to sell

the goods in the possession of the Packard Shoe Company with intent to place the proceeds beyond the reach of the bankrupt or the trustee, or that any injury would come to the bankrupt by retaining the goods in their possession. They then set up that the Packard Shoe Company was incorporated in due form, and was engaged in the shoe business at Helena, and that the bankrupt company was the owner of 800 shares of the capital stock of the Packard Shoe Company; that Dunn was the owner of 150 shares of said company, and that Holbrook and Swanson each owned 1 share in the said company; that the Packard Shoe Company had about $5,000 worth of merchandise, $1,000 worth of fixtures, and cash, in about the sum of $1,200, on deposit; and that its liabilities did not exceed $150. The answer also alleged that the Holbrook Shoe & Leather Company, bankrupt, had no right or interest in the property of the Packard Shoe Company, save as the owner of 800 shares of the capital stock of the said Packard Shoe Company; that the said Packard Company was regularly conducting its retail shoe business; and that, by reason of the restraining order having been issued, the business of the Packard Company had been closed, and that it had been greatly injured.

Hearing was had before the referee, and on September 18th he granted the summary order prayed for by the trustee.

Petition for review was filed, and three questions are certified by the referee: (1) Did the referee in the first instance have jurisdiction to proceed in said matter, and take testimony upon the petitions filed by the trustee and the answers filed thereto? (2) Does the testimony taken in this proceeding sustain the findings of the referee? (3) Was the referee without jurisdiction to make the summary order by him made in this proceeding?

A very careful study of the record certified in this matter leads me to conclude that it was the duty of the referee to hear the testimony, in order to pass upon the question whether the claim of the Packard Shoe Company to the property in its possession had an actual basis; that is, was it a real or merely colorable claim? Power and duty to make such inquiry must exist under the bankruptcy act, else we cannot escape from the illogical conclusion that the mere assertion of what may be designated an adverse claim can oust the summary jurisdiction of the bankruptcy court, and, as a result, the trustee cannot expeditiously collect the estate for the creditors. But we are not without judicial authority in the premises, as the Supreme Court has expressly declared there is no such ouster, and that jurisdiction exists. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405.

But how much farther may the bankruptcy court go? Counsel well say it is a serious matter to adjudge that property claimed by one person or corporation shall be summarily surrendered to the trustee in bankruptcy for the creditors of another corporation, as belonging to the latter; and it is in recognition of the strength of this argument that no such order will be made unless it follows a most cautious scrutiny of evidence and consideration of the correct principles of law. On the other hand, we must be mindful of a correlative rule of care for preservation of rights of creditors, and that the bankrupt law is founded upon the doctrine of the need for prompt and simple pro-

ceedings, whereby it is made the express duty of the court "to cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto," except as otherwise provided in the bankrupt law. Jurisdiction by bill in the nature of plenary suit obtains, as was held in Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; but such jurisdiction does not preclude litigation of the rights of parties in bankruptcy proceedings, as distinguished from controversies by independent suits, where the trustee applies for an order requiring one to turn over property in his possession, basing the application upon the ground that the property so held belongs to the bankrupt and is held without color of right.  This would seem to follow, because, the referee being bound to make the inquiry, if its extent is wholly circumscribed by power merely to ascertain whether there is any showing of right in another person, yet no power to proceed follows the ascertainment by the referee, practical good of the inquiry is nullified, for, upon the pleading filed by the one holding, there would generally appear to be facts sufficient to oust jurisdiction.  Manifestly, the statute requires a broader construction, one that not alone authorizes the inquiry by the hearing of testimony, but which also requires a decision upon the merits by the referee.  This decision may be that the claim is in good faith, but of doubtful validity or of questionable faith, yet is probably real, and hence that there ought to be an independent suit brought to try the questions; but if the decision is that the claim is without any actual merit or legal foundation, the referee should regard the property as subject to the jurisdiction of the bankruptcy court, as property of the bankrupt, and should therefore proceed to make an order requiring the actual wrongful holder to surrender to the court or trustee.

Now, after considering the evidence in the record of the present case, and without stating it at length, the only deductions that seem to me to be possible are that the Packard Shoe Company, incorporated about August, 1907, was organized for the purpose of taking over the stock and property of the Holbrook Shoe Company, so as to hinder and defeat the creditors of the latter.  It was organized at a time when the Holbrook Company was insolvent, and was known by its directors to be insolvent, and necessarily by the organizers of the Packard Shoe Company, who were one and the same group of individuals.  It cannot be successfully controverted that whatsoever vitality the Packard Shoe Company had was derived from Holbrook, Dunn, and Swanson, who were its organizers and directors, and who alone were the directors of the Holbrook Shoe Company.  The evidence all goes to prove that, as directors of a failing corporation, these three, with knowledge of all the circumstances of the declining credit and losing trade of the Holbrook Company, and at a time, in the last days of August, 1907, when business conditions were generally depressed and commercial credit accommodation was restricted, deliberately organized the Packard Shoe Company, and, by their own votes as directors of the Holbrook Company, attempted to transfer the principle assets of the failing company to their new corporation, of which, as said, they were also the trustees, and the only trustees.

Eight hundred shares of stock out of a possible 1,000 shares in the new company, apparently transferred September 10, 1907, is claimed to have been the consideration for the transfer of the goods taken over or to be taken over by the Packard Company. Examination discloses that there was a pencil memorandum of this stock matter made in the handwriting of Holbrook, but there was no regular credit entry of this 800 shares in the books of the Holbrook Company—a vital matter to the Holbrook Company—until December 19, 1907, and no entry at all in the books of the Packard Company until about March 11, 1908, or several months after the transaction itself, and after the Packard Company was organized and doing business, and until just about the date of the assignment by the Holbrook Company. Again, Holbrook, president of the failing company, and owner of 90 per cent. of its stock, was treasurer of the new company, and while Dunn, the elected president of the Packard Company, was put in charge of the Packard Company store in Helena, the clear weight of evidence is that his authority was regarded by himself and by Holbrook as very limited, and that all matters of finance and purchase connected with the Helena store, and the books and entries, were controlled by Holbrook, and were purposely kept directly under his authority and supervision at Butte, and that many of the letters and orders from Dunn were addressed to Holbrook individually.

The Holbrook Company, having reached the point of actual failure, made an assignment for the benefit of its creditors on March 11, 1908, and thereafter, on April 21st, was forced into involuntary bankruptcy. On May 8th a trustee was appointed for the bankrupt. May 11th a resolution of the directors of the Packard Company was passed, authorizing Dunn, as president of the Packard Company, to sell, transfer, mortgage, or assign the assets of the Packard Company as he might think best, and a stockholders' meeting of the said company was held, whereat an amendment to the by-laws was passed, so as to require a six months' written notice of a change in such by-laws. These things passed and were done with the participation of Holbrook and Dunn, as directors and stockholders, but without any notice to the trustee of the bankrupt, who, respondents themselves say, held 800 shares of stock of the Packard Company.

For these last referred to recorded acts, there is no sufficient justification or explanation made. Critical examination of the testimony of Holbrook and Dunn reveals evasions, inconsistencies, and palpable reluctance to make full and candid disclosures. Dunn's statement that he feared that the stock of the Packard Company might fall into hostile hands, and that his thoughts were to protect the company, and also himself, is really, in view of all the facts, strong evidence of deliberate purpose to defeat the rights of the creditors of the Holbrook Company by making it possible for him to dispose of the stock held as the Packard Company's, without regard to the attitude of the lawfully appointed trustee of the bankrupt concern, who had rights to 800 shares of the stock. So Holbrook's statement to the effect that a creditor of the Packard Company for some $800 was claiming an unjust amount, and that the resolution authorizing Dunn to assign or transfer, as he might think best, was to meet possible embar-

165 F.—62

rassments, is a most unlikely reason for having ignored the trustee, or for having made the change in the by-laws. Nor is the fact that the by-law was not acted upon, nor that Dunn did not assign or transfer the assets of the Packard Company, very material, considering that the trustee of the Holbrook Company, bankrupt, was active in asserting his rights in June, 1908, less than 30 days after May 11th, the date of the passage of the above-mentioned resolution. The fact of the passage of the resolution is, however, very material in exposing the methods and intentions of Holbrook and Dunn.

Another important point which, when weighed with the many other facts and circumstances, constrains the court to regard the transactions between the Packard Company and the Holbrook Company as having been carried on solely for the purpose of defeating the rights of creditors, is the action of the directors of the Holbrook Company in July, 1907, in raising Holbrook's salary, to date from January, 1906, and in distributing "the surplus account" to the various stockholders, and in not entering the credits for salary and dividends upon the books until December 31, 1907, when the business for 1907 was running at a heavy loss. Granting that such an unusual incident of business conduct, if standing by itself, might be reasonably explicable, on the ground of ignorance of the true state of the corporation's affairs or lack of knowledge of bookkeeping, or was bad business judgment, yet, when the acts themselves are considered with the many other acts of commission and omission, such as the failure to have entered on the books of the bankrupt a note for $7,500 due to the State Savings Bank, it is inconsistent with any purpose other than a scheme of intentional diversion of the funds of the corporation to the benefit of those in charge of the company's affairs, and to the grievous wrong of innocent creditors of the corporation.

But in addition to the things referred to, Dunn was a director and an officer of the Holbrook Company, and is chargeable with knowledge of the duty he owed to the creditors of that corporation, and cannot escape responsibility for participating in the transfer of its property at a time when it was insolvent. He knew, too, that by the scheme of the transfer to the Packard Company, not only were the creditors of the Holbrook Company losing the merchandise belonging to that corporation, but that he, Dunn, as director and president of the Packard Company, and that Holbrook, as treasurer and director of such company, were issuing to Holbrook, as president and managing director of the Holbrook Company, and owner of 90 per cent. of its stock, 800 shares of the Packard Company. In view of all the circumstances, could there be a more flagrant attempt to serve two masters? Holbrook, Dunn, and Swanson, sole directors of the selling company, through Holbrook, as treasurer, paying out to Holbrook, treasurer, for Holbrook, Dunn, and Swanson, directors in the buying company. In the face of all these and many other circumstances, when, through the trustee, the rights of innocent parties are seeking protection, how can the courts regard these transactions as compatible with commercial integrity and fair dealing toward those who had given credit to the Holbrook Company? And how, under the test of what is just to such innocent creditors, can the Packard Shoe Company be

looked upon as anything but the Holbrook Shoe Company doing business under disguise of the fiction of a corporate organization and name, formed and taken as a shield for defeating the rights of innocent parties?

Stress is laid upon the contention that Dunn in fact bought shares in the Packard Shoe Company, and, therefore, that if an order is made by which the referee's decision that the claim of the Packard Shoe Company is merely colorable is upheld, and that it must surrender the property held by it, the effect will be to deprive Dunn of his property without due process of law.    Not so.    Though the evidence is not strong upon the point, still it can be assumed that Dunn did, about September 12, 1907, put $1,200 in cash into the shares of stock of the Packard Shoe Company, and yet the case is not materially changed, and for these reasons:    As a director of the Holbrook Company, Dunn knew, as well as did Holbrook, that the Packard Shoe Company was organized for the purpose of hindering and delaying and defrauding the creditors of the Holbrook Company, and that, in pursuance of that plan, it was transferring its goods to the Packard Company, and that with such knowledge the Packard Company took them.    He knew, too, as did Holbrook, that the Holbrook Company was insolvent when the Packard Company was formed.    He knew, too, as did Holbrook, that the Holbrook Company, while unable to meet its liabilities, had voted Holbrook an increase in salary, and had directed a distribution of moneys on hand, to the great detriment of the rights of that company's creditors.    He knew, as well as did Holbrook, that the Packard Company made its purchases through the Holbrook Company, and that the bills of the Packard Shoe Company were charged to the Holbrook Shoe Company, and were met by Holbrook, his co-director in the two companies.    He knew, too, of the attempted change in the by-laws of the Packard Company, made after the trustee in the bankruptcy of the Holbrook Company had been appointed, and that the trustee in bankruptcy, holding the shares in the Packard Company, was not only ignored, but also that, in ignoring him, the Packard Shoe Company, through himself and Holbrook, directors, was taking further steps to make effective the previously laid plan of keeping the control of the new as well as of the old company, to the injury of the innocent creditors of the Holbrook Company.    And he knew, too, that the Packard Company's funds were used by the Holbrook Company to pay the latter's bills.

What position, therefore, is the bankrupt in, and what position is Dunn, one of its directors, in, when it and he attempt to uphold the transfer made to a company acting through themselves and for themselves?    Surely the law will not allow this mere form of corporate organization, a mere fiction, to be used to thwart the substance of right, and thus permit the innocent creditors to be deprived of what is theirs, but will disregard the corporate entity and hold the real parties as actually having in their hands the property which is lawfully in the custody of the law, as belonging to the bankrupt.    It follows that Dunn must be regarded as but a servant and agent, running a branch store of the Holbrook Company in Helena, under the style of the Packard Shoe Company; and it must be held as establish-

ed that when he purchased his shares, and put the money in the shares of the Packard Company, he was really lending money to the amount of his subscription to the Holbrook Company, and so, in fact, became a creditor of the Holbrook Company, of which organization he was also a director.

The essential difference between the attitudes of Dunn and of the other creditors of the Holbrook Company is that Dunn, knowing the facts and wrong purposes of the Holbrook Company, furthered them and loaned his money to that concern to embark upon a new venture in Helena, whereby it was intended to defeat the other creditors, while the creditors other than himself did not know of any fraudulent purposes or conduct, and innocently dealt with the failing company. Whether this may affect Dunn's rights as a creditor in proving his claim is not here passed on.

This discussion sufficiently answers the questions of the referee. The order made by the referee is confirmed. In order to give ample opportunity to the bankrupt to preserve its rights in the premises, stay of all proceedings will be had for 15 days from this date.