## LOVELL, TRUSTEE IN BANKRUPTCY OF KNIGHT, *v.* NEWMAN & SON.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 593. Submitted January 13, 1913.—Decided February 24, 1913.

Where the jurisdiction of the Federal court of a suit brought by a trustee in bankruptcy rests upon diverse citizenship alone the judgment of the Circuit Court of Appeals is final; if, however, the petition also discloses as an additional ground of jurisdiction that the case arises under the laws of the United States, the judgment of the Circuit Court of Appeals is not final but can be reviewed by this court.

Whether the case is one arising under the laws of the United States must be determined upon the statements in the petition itself and not upon questions subsequently arising in the progress of the case. *Macfadden* v. *United States*, 213 U. S. 288.

Section 23 of the Bankruptcy Act as amended by the act of February 5, 1903, conferring jurisdiction on the Circuit Courts of certain classes of cases was not intended to increase the jurisdiction of those courts in bankruptcy matters but rather to limit it to the classes of cases over which those courts are given jurisdiction by the acts creating them.

Whether the Federal court had jurisdiction on grounds other than diverse citizenship must be determined from complainants' own statement as set forth in the bill affirmatively and distinctly, regardless of questions subsequently arising; grounds of jurisdiction may not be inferred argumentatively.

A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws. There must be a controversy respecting the validity, construction or effect of such a law upon the determination of which the result depends.

Where a trustee in bankruptcy sues in the Federal court on the ground that the property, or bond representing the value thereof, belonged to the bankrupt, and diverse citizenship exists, the suit does not depend upon the validity, construction or effect of any law of the United States, and the judgment of the Circuit Court of Appeals is final.

Where a trustee permits a bond to be given for value of goods and sues on the bond as merely representing the goods, and not as required by any statute, the case is not one arising under the laws of the United States, and jurisdiction is not conferred on the Federal court by reason of the existence of such a bond.

Where diversity of citizenship exists, the trustee can sue in the Federal court without consent of defendant and if consent be given, it does not, where such diversity exists, create an independent ground of jurisdiction.

Writ of error to review 192 Fed. Rep. 753, dismissed.

THE facts, which involve the jurisdiction of this court on appeals from and error to the Circuit Court of Appeals in cases brought by trustees in bankruptcy, are stated in the opinion.

*Mr. John W. Griffin* and *Mr. Everett P. Wheeler*, for defendants in error, in support of motion to dismiss or affirm.

*Mr. W. A. Blount*, *Mr. H. Generes Dufour* and *Mr. Walker Percy*, for plaintiff in error, in opposition thereto.

MR. JUSTICE DAY delivered the opinion of the court.

This case is submitted upon motion to dismiss or affirm. The action was brought by William S. Lovell, Trustee of Knight, Yancey & Company, against Isidore Newman & Son and others in the United States Circuit Court for the Eastern District of Louisiana, to recover stipulated damages in the sum of $98,500 on a certain bond. Issues were joined and the case was tried and a judgment rendered in favor of the defendants. 188 Fed. Rep. 534. On writ of error the Circuit Court of Appeals affirmed that judgment. 192 Fed. Rep. 753,

A writ of *certiorari* to the judgment of the Circuit Court of Appeals was prayed and denied. (December 23, 1912.)

The question of jurisdiction presented is, Was the judgment of the Circuit Court of Appeals final or is it subject to review by writ of error in this court? As the present suit was upon a bond and concerns the right of the trustee to recover thereon, it presents a controversy arising in a bankruptcy proceeding, the finality of which in the Circuit Court of Appeals depends upon the application of the Circuit Court of Appeals Act to the case. *Hewit* v. *Berlin Machine Works*, 194 U. S. 296; *Coder* v. *Arts*, 213 U. S. 223, 233; *Knapp* v. *Milwaukee Trust Co.*, 216 U. S. 545, 553; *Tefft, Weller & Co.* v. *Munsuri*, 222 U. S. 114, 118. If the jurisdiction in the present case rests alone upon diverse citizenship, then, under the Circuit Court of Appeals Act, the judgment of the Circuit Court of Appeals is final; if, as contended by the plaintiff in error, the peti-

tion in the case discloses, as a ground of jurisdiction in addition to that of diverse citizenship, that the case arises under the laws of the United States, then the judgment of the Circuit Court of Appeals is not final and the case can come here from that court. And it is well settled that this question must be decided, not because of questions which may have arisen or which might arise in the subsequent progress of the case, but upon the grounds of jurisdiction asserted in the petition. *Macfadden* v. *United States*, 213 U. S. 288.

Turning then to the petition for the assertion of the cause of action upon which this suit was brought, we find from its averments that Knight, Yancey & Company, partners, doing business in Decatur, Alabama, were adjudicated bankrupts by the District Court of the United States for the Northern District of Alabama on the twentieth of April, 1910; that Lovell, the trustee in bankruptcy, is a citizen of the State of Alabama, and also that the members of the partnership and each of them are citizens of other States than Louisiana. It appears in the petition that on the third of May, 1910, C. E. Frost and Lovell, who were then receivers in bankruptcy of Knight, Yancey & Company, filed, as such receivers, in the United States District Court for the Eastern District of Louisiana, their petition, which is attached to and made part of the petition in this case, setting forth that certain cotton was in the possession of the master of the Steamer Ingelfingen at the port of New Orleans, and would, unless restrained, be shipped beyond the jurisdiction of the court; that certain persons in Italy held spurious bills of lading upon which they would seek to obtain possession of such cotton; that the original bills of lading had been destroyed or made away with and were not in the hands of bona fide holders; that therefore the legal title to the cotton was in the petitioners and that any attempt to ship the cotton to a foreign country would result in depriving the

bankrupt estate of that asset and would subject it to the claims of foreign creditors, and would constitute an unlawful preference within the meaning and intendment of the Bankruptcy Act in favor of the foreign holders of the spurious bills of lading, and they prayed for an injunction or that in the alternative the court would order the United States Marshal to seize and take possession of the cotton, and prayed for an order upon the master of the Steamer Ingelfingen, its owners and agents, to show cause, if any they could, why the relief prayed for should not be granted. A restraining order was issued by the District Court, the master of the Ingelfingen appeared, excepted to the petition, alleging that the receivers had no right or capacity to institute suit and that the court was without jurisdiction, and afterwards filed an answer in which he set up that the partnership had sold cotton to various Italian purchasers under contracts in the usual mercantile course, that is, it had shipped the cotton to Italy to its order upon through bills of lading, and drafts for the price of the cotton with the bills of lading attached had been discounted, the Italian purchasers finally taking up the drafts and securing the cotton covered by the bills of lading; that in February, 1910, the partnership discounted, and the Italian purchasers subsequently paid, certain drafts with bills of lading attached, alleged in the petition to be forged, covering 1400 bales of cotton bearing certain marks, and they acquired the bills of lading in the regular course of business, prior to the filing of the petition in bankruptcy, for value and in ignorance of the forgery; that in March and April of that year the partnership shipped the cotton called for by the bills of lading, the cotton bearing the same marks and the bills of lading being substantially identical with the alleged forged bills of lading, and being the bills of lading alleged in the petition to have been made away with, and that 89 bales of the cotton were previously exported and the 1311 remain-

ing bales were on board the Ingelfingen. The master
further alleged that the cotton was the property of the
Italian purchasers and rightfully in his possession as bailee
and that the bankrupt estate had no interest in the cotton;
that if the bills of lading in the hands of the purchasers
were spurious they were forged by the partnership and
that the cotton was shipped under genuine bills of lading
which were not now outstanding but of which the alleged
forged bills of lading were duplicates; that the partnership
was paid for the cotton, which was apportioned to cover
the bills of lading held by the purchasers in good faith
and at a time when the partnership was not known to be
insolvent; that the purchasers and their agents were ig-
norant of the forgery or that the shipment was other than
in regular course, and that no preference was given them.
The master also alleged that the partnership had for some
time been following this practice and that the purchasers
had been securing their cotton under forged bills of lading,
of which practice they were ignorant until after the filing
of the petition in bankruptcy. The master further alleged
that he was the bailee under regular bills of lading and
bound to deliver to the true owners, for whom he was
obliged to protect the cotton for which he had issued re-
ceipt, and was entitled to earn his freight, for which and
other charges he had a lien on the cotton, and that the
charges would be increased by further delay. He denied
the inadequacy of a remedy at law. The agent of the
steamer also appeared and adopted the answer of the mas-
ter of the Ingelfingen as his own. The court, upon a hear-
ing, ordered a temporary injunction upon the receivers
giving bond in the sum of $10,000, and thereupon, the
bond having been given and the temporary injunction
awarded, the bond now in suit was executed and delivered,
running to the Receivers and such Trustee as might be
elected or appointed, which after reciting the order of
injunction, provided:

"Whereas, it was further provided in said order or injunction that said cotton might be removed out of said jurisdiction upon the filing by the Respondents in said proceeding, or either of them, of a bond for the value of said cotton, which has been fixed by agreement for purposes of bonding at the sum above mentioned.

"Now, therefore, the condition of this obligation is such that if said Th. Ruhne and Isidore Newman and Son, New Orleans, La. above mentioned shall well and truly pay to said obligees the said sum of Ninety-eight thousand Five hundred ($98,500.00) Dollars, or such part thereof as the Court may direct, if, in a suit or action at law or in equity that may or shall hereafter be brought on this bond by said Receivers, or by said Trustee or Trustees, or by said Estate in bankruptcy against the obligors herein, or either of them, in the Circuit or District Court of the United States for the Eastern District of Louisiana, it shall be adjudged that said Receivers, or said Trustee or Trustees of said Knight, Yancey & Company, or the Bankrupt Estate of said Knight, Yancey & Company have the right, title or interest in or to said cotton, or any part thereof, then and in such case this obligation shall be null, void and of no effect; otherwise the same shall remain in full force and effect."

From this recital it is apparent that the proceeding in the United States District Court for the Eastern District of Louisiana was ancillary to the original proceeding in the Court of Bankruptcy in Alabama, where the adjudication was had. It was long in doubt whether under the act of 1898 such ancillary proceeding would lie in another District Court, but the matter was settled in favor of such jurisdiction in aid of the original jurisdiction by the decisions of this court in *Babbitt* v. *Dutcher*, 216 U. S. 102, and in *Elkus, Petitioner*, 216 U. S. 115. Later, after this ancillary suit was brought, the Congress removed all doubt concerning the matter by passing the act of June 25,

1910 (36 Stat. 838), expressly conferring such ancillary jurisdiction in aid of the jurisdiction of the Bankruptcy Court which had appointed the receiver or trustee.

The present action was brought upon the bond in the United States Circuit Court and was taken by writ of error to the Circuit Court of Appeals, and the appellate jurisdiction to review that court is the one now in question. Section 23 of the Bankruptcy Act must be consulted to determine the jurisdiction of the Circuit Court. That section provides:

"Sec. 23. *a.* The United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"*b.* Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section sixty, subdivision b, and section sixty-seven, subdivision e" [the exception being added by the amendment of February 5, 1903].

That section gives jurisdiction to the Circuit Courts of the United States of controversies at law or in equity, as distinguished from bankruptcy proceedings, between the trustee and adverse claimants in the same manner and to the same extent as though bankruptcy proceedings had not been instituted. It is also provided that suits by the trustee can only be brought in courts where the bankrupt might have brought them, if proceedings in bankruptcy

had not been instituted, unless by consent of the proposed defendant. Later when Congress enlarged the jurisdiction of the District Court by the act of February 5, 1903, exception was made in favor of certain suits for the recovery of property in fraud of the act, but this did not affect suits of the present character. The cases in this court which have considered this section have determined that it was not intended to increase the jurisdiction of the United States Circuit Courts in bankruptcy matters, but rather to limit it to such suits and controversies as are within the jurisdiction given such courts by the acts creating them, that is, controversies in law and in equity with adverse claimants where the amount involved is in excess of $2,000 where diverse citizenship exists (the citizenship test being, because of the Bankruptcy Act, that of the bankrupt and not that of the trustee), or there is a cause of action arising under the Constitution or laws of the United States. *Bush* v. *Elliott*, 202 U. S. 477; 1 Loveland on Bankruptcy, 4th ed., §§ 74 *et seq.*; 1 Remington on Bankruptcy, § 1686.

The present suit, so far as the ground of diverse citizenship is concerned, conforms to the requirement of the Bankruptcy Act as construed in *Bush* v. *Elliott, supra*, for the citizenship of the bankrupts is other than that of Louisiana, and the amount in controversy exceeds the sum of $2,000. But it is contended that the petition also discloses a ground of jurisdiction other than diverse citizenship, and upon the solution of that question the present jurisdiction depends. This court had recent occasion to summarize the principles upon which such jurisdiction rests in *Shulthis* v. *McDougal*, 225 U. S. 561, and we can do no better than to recur to that summary for a statement of the principles which must control in deciding the present case (p. 569):

"1. Whether the jurisdiction depended on diverse citizenship alone, or on other grounds as well, must be determined from the complainant's statement of his own

cause of action as set forth in the bill, regardless of questions that may have been brought into the suit by the answers or in the course of the subsequent proceedings. *Colorado Central Mining Co.* v. *Turck*, 150 U. S. 138; *Tennessee* v. *Union and Planters' Bank*, 152 U. S. 454; *Spencer* v. *Duplan Silk Co.*, 191 U. S. 526; *Devine* v. *Los Angeles*, 202 U. S. 313, 333.

"2. It is not enough that grounds of jurisdiction other than diverse citizenship may be inferred argumentatively from the statements in the bill, for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth. *Hanford* v. *Davies*, 163 U. S. 273, 279; *Mountain View Mining Co.* v. *McFadden*, 180 U. S. 533; *Bankers' Casualty Co.* v. *Minneapolis &c. Co.*, 192 U. S. 371, 383, 385.

"3. A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends."

Does it then appear in the petition in the present case, in addition to averments of diverse citizenship, that the petitioner has asserted a ground of jurisdiction which "really and substantially involves a dispute or controversy respecting the validity, construction or effect of a law of the United States and upon which his right to recover depends?" Such a cause of action was not asserted simply because the action was brought by an assignee in bankruptcy. Mr. Justice Gray, speaking for the court, said, in *Bardes* v. *Hawarden Bank*, 178 U. S. 524, 536:

"The first clause provides that 'The United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy' (thus clearly recognizing the essential

difference between proceedings in bankruptcy, on the one hand, and suits at law or in equity, on the other), 'between trustees as such and adverse claimants, concerning the property acquired or claimed by the trustees,' restricting that jurisdiction, however, by the further words, 'in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupt and such adverse claimants.' This clause, while relating to the Circuit Courts only, and not to the District Courts of the United States, indicates the intention of Congress that the ascertainment, as between the trustees in bankruptcy and a stranger to the bankruptcy proceedings, of the question whether certain property claimed by the trustee does or does not form part of the estate to be administered in bankruptcy, shall not be brought within the jurisdiction of the national courts solely because the rights of the bankrupt and of his creditors have been transferred to the trustee in bankruptcy."

This was also held in *Spencer* v. *Duplan Silk Co.*, 191 U. S. 526, in which the assignee brought an action in the state court in trover for the conversion of goods alleged to belong to the estate. Diversity of citizenship was shown, and upon that ground the case was removed to the Circuit Court of the United States. It went to the Circuit Court of Appeals, and it was then contended that it might be reviewed here, but the writ of error was dismissed for lack of jurisdiction, Mr. Chief Justice Fuller saying (p. 530):

"But a suit does not so arise unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution, or validity or construction of the laws or treaties of the United States, upon the determination of which the result depends, and which appears in the record by plaintiff's pleading. . . .

"Plaintiff's declaration set forth no matter raising any

controversy under the Constitution, laws or treaties of the United States. It is true that if the lumber and materials belonged to Bennett and Rothrock on January 13, 1900, plaintiff in error succeeded to the title of the firm on the adjudication, but the question of Bennett and Rothrock's ownership on that day in itself involved no Federal controversy, and the mere fact that plaintiff was trustee in bankruptcy did not give jurisdiction. *Bardes* v. *Bank*, 178 U. S. 524. Indeed if the case had not been removed and had gone to judgment in the Court of Common Pleas, and that judgment had been affirmed by the Supreme Court of Pennsylvania on the same grounds as those on which the Circuit Court of Appeals proceeded, a writ of error could not have been brought under § 709 of the Revised Statutes, for the case would not have fallen within either of the classes enumerated in that section as the basis of our jurisdiction. The validity of the bankruptcy act was conceded, and no right specially set up or claimed under it was denied."

That case has frequently been cited approvingly since. *Warder* v. *Loomis*, 197 U. S. 619; *Watkins* v. *American Nat'l Bank of Denver*, 199 U. S. 599; *Mobile Transportation Co.* v. *Mobile*, 199 U. S. 604; *Montana Catholic Missions* v. *Missoula County*, 200 U. S. 118, 126; *Empire State-Idaho Mining and Developing Co.* v. *Bunker Hill and Sullivan Mining Co.*, 200 U. S. 613; *Russell* v. *Russell*, 200 U. S. 613; *Bush* v. *Elliott, supra; Warder* v. *Cotton and Grant*, 207 U. S. 582; *Shulthis* v. *McDougal, supra.*

The trustee, for his recovery upon the bond, did not rely upon any right specially conferred upon him under the Federal statute which was the subject of controversy, and therefore a ground of jurisdiction. He sued to recover upon the bond solely because of his claim that the 1311 bales of cotton were at the time of the bankruptcy proceeding the property of Knight, Yancey & Company. He alleged in the petition that:

"Your petitioner further avers that the said 1311 bales of cotton were at the time of the bankruptcy proceedings and have ever since been the property of Knight, Yancey & Company, and that as Trustee in bankruptcy of the said Knight, Yancey & Company, your petitioner as aforesaid is the owner of and has the right, title and interest in and to the said 1311 bales of cotton, and that your petitioner is therefore entitled to proceed against and to demand, collect and receive the principal sum of the bond filed by the said Th. Ruhne with the said Isidore Newman & Son as surety. . . . ."

And in the amended petition he again averred:

"Your petitioner further avers that the statements in said petition contained with reference to said bills of lading are not true in point of fact, and that the bills of lading for all of said cotton described in the original petition herein, and in the petition in said suit No. 14,129, were in the possession and under the control of the Receivers of Knight, Yancey & Company, Bankrupt, and have since come into the possession and are now under the control of your petitioner as Trustee of Knight, Yancey & Company, Bankrupt, and your petitioner reiterates that the title to all of the cotton described in said original petition was in said Knight, Yancey & Company, Bankrupt, and is in said bankrupt estate and in your petitioner as the Trustee in Bankruptcy of Knight, Yancey & Company, Bankrupt."

And the Circuit Court in determining the character of the action said:

"As this case stood on the original petition, in view of some of the allegations of the petition in the district court referred to, there might have been some doubts as to plaintiff's right to proceed at law but, considering the supplemental petition whereby the plaintiff has eliminated those pleadings from the instant case and stands solely on his claim of absolute ownership of the cotton, it is clear

the action is properly at law. If anything were needed to strengthen this, the statement of plaintiff's counsel in open court that he disavows any intention of claiming a voidable preference against any one, in regard to the shipment of the cotton, is sufficient."

It therefore appears that the action, as outlined in the petition, made the plaintiff's right to recover depend upon the ownership of the property by the bankrupt as its own before the bankruptcy proceeding. The investigation of this question involved only matters of general law, and did not depend upon any right conferred by the Bankruptcy Act upon the trustee.

The cases cited by the plaintiff to the effect that actions upon marshals' bonds, etc., under statutes of the United States, give jurisdiction to the Circuit Court because they arise under the laws of the United States, are not in point; no more are cases in which this court has held that the decision of a state court might be reviewed when the construction of the Bankruptcy Act claimed by a party in interest as a Federal right has been denied. The bond here was not required by any law of the United States. It was permitted to be given that the property might be removed upon the steamer upon which it was about to be carried abroad. Under the allegations of his complaint the trustee could recover if he could show that the bankrupt owned this property before the bankruptcy proceedings. It is said that this bond could not be recovered upon unless the trustee could show that the property was such as had passed to the trustee and was liable to execution at the suit of his creditors. But there is nothing in the petition to show any lien upon the property or any averments which would have prevented its being made the subject of levy by creditors if it was owned by the bankrupt. The fact that such matters might have been brought up by the defendants or that questions may arise in the subsequent progress of the action which involve laws of

the United States, it has frequently been held, does not give jurisdiction. The petition must assert grounds of recovery which involve a controversy concerning such laws.

It is also asserted that this case shows not only diversity of citizenship giving jurisdiction to the Circuit Court under § 23 of the Bankruptcy Act, but the bond itself gives consent that the suit may be brought in the Circuit Court, and that this is an independent ground of jurisdiction. But in this case diversity of citizenship between the bankrupt and the defendants existed and no consent was required to enable the plaintiff to sue in the Circuit Court. Furthermore, the consent provided for in § 23b certainly was not intended to enlarge the jurisdiction of the Circuit Courts of the United States so as to give them a jurisdiction which they would not have because of diverse citizenship and a requisite amount in controversy or by reason of a cause of action arising under the Constitution or laws of the United States. 1 Remington on Bankruptcy, § 1686. *Bush* v. *Elliott, supra.*

We reach the conclusion that the jurisdiction of the Circuit Court asserted in the petition in this case rested alone upon diverse citizenship, and therefore under the Circuit Court of Appeals Act the case is one of those made final in the Circuit Court of Appeals.

*Writ of error dismissed.*