TATE v. BRINSER.

(District Court, M. D. Pennsylvania.   June, 1915.)

1. Courts ⬦═▷280—Jurisdictional Questions—Pleading.
    The overruling of an objection to jurisdiction by a federal court, raised by a special appearance for the purpose, does not render the question res judicata, but the objection may be renewed by answer.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. ⬦═▷280.]

2. Bankruptcy ⬦═▷292—Suits by Trustee—Jurisdiction.
    A suit by a trustee for an accounting with respect to property the legal title to which is in the defendant, but in which the bankrupt is alleged to have an equitable interest by virtue of a partnership with defendant, neither the partnership nor defendant having been adjudged bankrupt, and the bankrupt having assigned his interest in the property to defendant for value more than a year before his own adjudication, is one against an adverse claimant, and by the express terms of Bankr. Act July 1, 1898, c. 541, §§ 23a, 23b, as amended by Act Feb. 5, 1903, c. 487, § 8, and Act June 25, 1910, c. 412, § 7, 36 Stat. 840 (Comp. St. 1913, § 9607), is not within the jurisdiction of a federal court except with the defendant's consent, unless it could have been maintained in such court by the bankrupt if bankruptcy proceedings had not been instituted.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 410, 413, 415, 416; Dec. Dig. ⬦═▷292.]

⬦═▷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BANKRUPTCY ☞292—SUITS BY TRUSTEE—JURISDICTION OF FEDERAL COURT
—CONSENT OF DEFENDANT.

Proof of claims against a bankrupt estate and the voting, or attempting to vote, the same do not constitute a consent by the claimant to the jurisdiction of a federal court in a suit subsequently brought against him by the trustee, relating to matters not involved in the claims presented.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 410, 413, 415, 416; Dec. Dig. ☞292.]

In Equity. Suit by Mercer B. Tate, trustee of estate of Fletcher W. Ployd, bankrupt, against Christian L. Brinser. Dismissed for want of jurisdiction.

See, also, 183 Fed. 791.

E. E. Beidleman, of Harrisburg, Pa., for plaintiff.
Wolfe & Bailey, of Harrisburg, Pa., for defendant.

WITMER, District Judge. The plaintiff in this bill asks for an accounting and decree in favor of the bankrupt estate, for such balance as may be due the estate from the defendant, by virtue of several contracts between the bankrupt and the defendant, pertaining to the promotion and sale of a plot of ground known as Rutherford Heights, Swatara township, Dauphin county, this district.

Brinser owned a farm in the township and county aforesaid and on the 16th day of July, 1906, entered into a written contract with Ployd, wherein, inter alia, the latter was authorized to—

"take possession of the said farm or tract of land for the purpose of surveying, plotting, laying out and dividing into building lots."

Brinser specially reserved from the operation of the contract the land occupied by the house, barn, outbuildings, and garden until the expenses and purchase price of the land were fully paid. Under the contract Brinser had the right to use, as he might see fit, any portion of the farm not actually laid out in building lots, but not in such manner as to interfere with the plotting, laying out, and sale of lots, or any part of the farm. Ployd agreed to grade, plot, and do all things necessary to put the farm into marketable building lots and to sell the lots, but he had no interest in the land or lots. The profits of the venture were to be equally divided between the parties. Under the contract all money derived from the sale of lots was to be applied as follows:

"(a) To expenses incident to the plotting and sale of lots, which shall include only surveying, plotting, advertising and expenses incident to the execution of deeds and commissions for sale of lots, and before said expenses are incurred the amounts shall be mutually agreed upon.

"(b) There shall be paid out of the balance remaining, the value or purchase price of the land, which is herein mutually fixed at a sum equal to two hundred and fifty dollars ($250) for each and every acre, or fraction thereof; the said value not having reference to any particular acre, but to the farm as a whole.

"(c) The balance of the money derived from the sale of lots shall be divided equally between the parties hereto."

It was also provided:

"That Brinser will make, execute and deliver to any and all purchasers of parcels or lots of the said land good and sufficient deed or conveyance upon

the payment to him, the said party of the first part [Brinser], of the purchase money of said parcels or lots, or so much thereof as may be hereafter agreed upon between the parties hereto; and after the payment of the expenses above enumerated and the purchase price of the farm, to execute and deliver to the party of the second part [Ployd], a good and sufficient deed or conveyance of an undivided one-half interest in and to all the land or lots remaining unsold. And that this contract shall come to an end, cease and determine at the expiration of twenty-four (24) months from the date hereof, unless continued by mutual agreement; and a full and complete settlement of the business transacted during the term of this agreement shall be had between the parties hereto, including a division of the profits, if any, and the conveyance of an undivided one-half interest in and to all the land and lots aforesaid remaining unsold by the party of the second part, after the payment of the expenses and the price of the land."

This contract was extended for the period of one year from July 16, 1908. The farm was plotted, graded, and improved, and 193 lots were sold by Ployd, from which was realized $38,591.20, of which the sum of $16,787.50, over and above expenses of improving and promoting the sale, was paid to Brinser on account of the purchase price of the farm. Brinser admits the payment of this sum.

The parties prepared and placed on record in the proper office of Dauphin county a plan showing 66.75 acres in the plot. Upon this acreage, acquiesced in by both parties at the inception of the promotion, Brinser was paid in full for the farm, and $100 in excess thereof. It seems the defendant made a re-estimate of the acreage, including some land occupied by a public road, not embraced in the plot recognized and filed by the parties, wherein the defendant ascertained that the farm contained 68.3 acres. However, for the purposes of this case, we think this dispute becomes immaterial.

March 6, 1907, Brinser and Ployd executed a supplemental contract, reciting the former agreement, calling attention to Brinser's advancement of moneys for the erection of certain frame houses upon certain lots upon the plot and agreeing—

"that after deducting the price of each lot at the sum of two hundred dollars ($200), each, from the proceeds of the sale of any of the said lots so improved by the erection of buildings at the expense of the party of the first part (Brinser), as aforesaid, there shall first be paid to the party of the first part,—before any division of profits as provided in the said agreement of July 16th, 1906,—all moneys paid, expended or advanced by him for the erection of the buildings upon the said lots. All profits on said buildings after the above deductions have been made shall be divided between the parties hereto in accordance with the terms of the agreement of July 16th, 1906."

In September or October, 1907, a parol contract was made between the parties for the erection of eight brick dwelling houses on certain other lots upon the plot, the terms of which were similar to those recited in the written contract relating to the frame houses.

Under all these contracts there was to be a division of profits, either in money or lots, after paying Brinser for his land and the money advanced by him for the erection of the houses. Brinser brought to the venture capital in the form of land and money, and Ployd was to supply the practical means and energy to make the undertaking a success. During the running of these contracts, Ployd was also engaged in making extensive improvements on lots purchased by himself, and, finally, being pressed for money, on the 25th day of June, 1909, by writing, for

moneys advanced and to be advanced to Ployd by Brinser, Ployd assigned to Brinser all his (Ployd's) rights in and to the contract of July 16, 1906, and the extensions thereof, as collateral to pay such indebtedness.

These contracts terminated July 16, 1909, and, under the proofs, Ployd had no control over the properties thereafter, but Brinser did permit him to collect certain rents and early in 1910 to attempt a public sale of certain unsold lots upon the plot. Ployd was adjudicated a bankrupt on the 6th day of August, 1910. Being of the opinion that these contracts constituted a partnership between the parties (Brady v. Jennings, 201 Pa. 473, 51 Atl. 343), wherefore a conversion of assets and settlement of accounts should, in some way, be effected, the court made an effort, turning aside from the jurisdictional and formal questions presented, to assist the parties to a final adjustment of the differences involved, which it is to be regretted was not successful.

[1] At the time of the filing of the bill, defendant's counsel entered a special appearance for the purpose of objecting to the jurisdiction of this court, and immediately filed a motion to dismiss the bill for that reason. Upon argument, the court overruled the motion to dismiss and directed the defendant to answer. Upon answer filed, testimony was taken, and the case came for argument upon bill, answer, and proofs. The defendant then renewed his objection to the jurisdiction, having also interposed the objection to the jurisdiction in his answer. The plaintiff then set up the previous ruling of this court upon the jurisdictional question as res adjudicata. The court does not so regard it. 1 Foster's Fed. Prac. (4th Ed.) § 101, p. 463.

"After a special appearance for the purpose of objecting to the jurisdiction has been made, and the objection overruled, the right to insist upon this objection on an appeal is not lost by a subsequent appearance and defense to the suit upon the merits."

[2] Coming now to the question of jurisdiction. If Ployd had not been adjudicated a bankrupt, neither Ployd nor Brinser could have maintained this action in the federal court. If there is jurisdiction, therefore, it must be by virtue of some provision of the Bankruptcy Act. The legal title to the unsold portion of the farm never vested in the partnership, but remained in Brinser at the date of Ployd's adjudication. Whatever equitable interest Ployd may have had therein was assigned by Ployd to Brinser to secure the indebtedness of the former to the latter, more than one year prior to Ployd's adjudication. There never was any adjudication of the partnership. Section 5, clause (c) of the Bankruptcy Act (Comp. St. 1913, § 9589) provides that:

"The court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of all the partners and of the administration of the partnership and individual property."

However, clause (h) of section 5, provides:

"In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

226 F.—56

Brinser was not adjudicated a bankrupt. There is no doubt that where one member of a firm has been adjudicated a bankrupt, his individual assets, as well as his beneficial interest in the partnership assets, passes to his trustee. Jarecki Mfg. Co. v. McElwaine (C. C., Ind.) 5 Am. Bankr. Rep. 751, 107 Fed. 249. Likewise, where a partnership has been adjudicated in bankruptcy an individual partner who has not been adjudged a bankrupt may be required to turn over his separate estate to the trustee in bankruptcy. Francis v. McNeal (C. C. A., 3d Cir.) 26 Am. Bankr. Rep. 555, 186 Fed. 481, 108 C. C. A. 459, affirmed in 228 U. S. 695, 33 Sup. Ct. 701, 57 L. Ed. 1029, 30 Am. Bankr. Rep. 244. However, while the bankrupt court has jurisdiction over the interest in the partnership property of the bankrupt members of the firm, after that interest, if any, shall have been ascertained and set aside, nevertheless the right, in such case, of the solvent partner to have the partnership business administered elsewhere than in bankruptcy is absolute, unless waived by him. Marnet Oil & Gas Co. v. Staley (C. C. A., 5th Cir.) 33 Am. Bankr. Rep. 266, 218 Fed. 45, 133 C. C. A. 108.

Passing for the time being the matter of waiver or consent under section 5, subdivision (h), and turning to section 23, subdivision (b) of the Act, it appears (subdivision (a) [Comp. St. 1913, § 9607]):

"The United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants."

Subdivision (b) provides:

"Suits by the trustee shall only be brought and prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section 60, subdivision b; section 67, subdivision e; and section 70, subdivision e."

Clearly the case does not fall within the exception of the foregoing provision. This is a plenary suit in equity against Brinser for an accounting relating to an equitable interest in certain property, which interest has been assigned to him as collateral to secure certain indebtedness due him. Upon the facts of the case Brinser would be regarded an adverse claimant if he would be proceeded against in the bankruptcy court. In re Gill (C. C. A., 8th Cir.) 26 Am. Bankr. Rep. 883, 190 Fed. 726, 111 C. C. A. 454, and, a fortiori, he must be held to be an adverse claimant in this equity proceeding. As such claimant an action at law or in equity cannot be maintained against him, unless the bankrupt, Ployd, could have sustained such action. That is, there must be diverse citizenship as between the bankrupt and the defendant and the requisite amount must be involved (In re McDougall [D. C.] 175 Fed. 400–405), or the cause of action must arise under the Constitution or the laws of the United States (Lovell v. Newman, 227 U. S. 412, 33 Sup. Ct. 375, 57 L. Ed. 577, 29 Am. Bankr. Rep. 482). Neither the Constitution nor any statute of the federal government is involved in this action. As a matter of fact there is no diverse citizenship. More-

over, the bill does not allege any of the things, except consent, essential to confer jurisdiction.

If Ployd could not have maintained this action, upon the allegations of the bill, prior to his adjudication, his trustee cannot maintain it, since the very evident purpose of section 23, subds. (a) and (b), of the act was not intended to enlarge the jurisdiction of either the Circuit or District Courts in bankruptcy matters, but rather to limit to such suits and controverises as are within the jurisdiction given such courts by the act creating them. This very question is squarely ruled by Lovell v. Newman, 227 U. S. 412, 33 Sup. Ct. 375, 57 L. Ed. 577, 29 Am. Bankr. Rep. 482. Said Mr. Justice Day:

"That section [23, subdivisions (a) and (b)] gives jurisdiction to the Circuit Courts of the United States of controversies at law or in equity, as distinguished from bankruptcy proceedings, between the trustee and adverse claimants in the same manner and to the same extent as though bankruptcy proceedings had not been instituted. It is also provided that suits by the trustee can only be brought in courts where the bankrupt might have brought them, if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant. Later, when Congress enlarged the jurisdiction of the District Court by the act of February 5, 1903, exception was made in favor of certain suits for the recovery of property in fraud of the act, but this did not affect suits of the present character. The cases in this court which have considered this section have determined that it was not intended to increase the jurisdiction of the United States Circuit Courts in bankruptcy matters, but rather to limit it to such suits and controversies as are within the jurisdiction given such courts by the acts creating them, that is, controversies in law and in equity with adverse claimants where the amount involved is in excess of $2,000 where diverse citizenship exists (the citizenship test being, because of the Bankruptcy Act, that of the bankrupt, and not that of the trustee), or there is a cause of action arising under the Constitution or laws of the United States. Bush v. Elliott, 202 U. S. 477, 26 Sup. Ct. 668, 50 L. Ed. 1114, 15 Am. Bankr. Rep. 656; 1 Loveland Bankr. (4th Ed.), § 74 et seq.; 1 Remington Bankr. § 1686."

[3] Coming now to the matter of consentable jurisdiction. In the original bill there was no allegation of such consent, but the plaintiff by leave of court amended his bill, alleging submission of defendant because he participated in the hearings before the referee in bankruptcy, by presenting prior claims which he attempted to vote for the election of a trustee, and his consequent petition for review of the order entered by the referee. By what possible process of reasoning can it be said that these facts constitute consent, either under section 5, subdivision (h), or section 23, subdivision (b)? Surely the proof of these claims in no manner committed the defendant to a waiver of his unquestioned right to have the affairs of the partnership administered elsewhere than in the bankruptcy court. There was no attempt then being made to bring the partnership assets into such court, and how could it be said that Brinser assented to such when it was not being attempted? The referee's decision upon the right of Brinser to vote the claims for the election of a trustee, and the review of that decision by the court upon the petition of Brinser, in no manner involved the partnership assets. Whether they should be brought in by the solvent partner was neither before the referee nor the court.

And it cannot be said that the proof of claims against a bankrupt and the voting or attempting to vote them amounts to consent under section

23, subdivision (b). That provision has to do with consent relative to the institution of actions at law or in equity in the Circuit (now District) Court. When these claims were proven and attempted to be voted, Brinser was not confronted with any such action. There was no such action. The moment he was confronted with the action he promptly challenged the jurisdiction and has persisted in that challenge ever since. The court being without authority to take jurisdiction in this matter and being equally satisfied that the conduct of Brinser in proving his claim in bankruptcy does not amount to consent of jurisdiction, the bill must be dismissed. On a careful examination of the case of Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157, 14 Am. Bankr. Rep. 45, relied on by the plaintiff, the case at bar appears distinguished. Differing from the facts in this case, there the bankrupt firm was in possession of the very goods at the time of the firm's adjudication. They were the goods of the firm, and had been wrongfully surrendered by the receivers in bankruptcy, without any order of the bankrupt court. Here and in this case the property in controversy has always been indivisible and yet remains in the possession of the defendant.

The bill is dismissed, at the cost of the trustee, without prejudice to his right to seek a remedy in the proper forum.