### TOLEDO FENCE & POST CO. v. LYONS.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1923.)

No. 3904.

1. **Corporations ⊗⇒557(2)—Allegations of bill held insufficient as basis for appointment of receiver.**

A bill by a trustee in bankruptcy alleging that bankrupt was the controlling stockholder and general manager of defendant corporation, that with intent to defraud his creditors he had canceled and discharged indebtedness from the corporation to him, and that defendant was in danger of insolvency, *held* not to state grounds for appointment of a receiver for defendant, where it was not alleged that it owed other debts or was mismanaged.

2. **Equity ⊗⇒53(1)—Objection to jurisdiction on ground of adequate remedy at law may be waived.**

Though there may be an adequate remedy at law to recover a debt due a bankrupt estate, where it is alleged that the indebtedness arose out of a fraudulent transaction which makes an accounting necessary to determine the amount due, objection to jurisdiction of equity must be made at the first opportunity in the trial court, or it is waived.

3. **Bankruptcy ⊗⇒293(4)—Defendant in suit by trustee held to have "consented" to jurisdiction.**

Where defendant in a suit by a trustee appeared without objection, obtained a postponement, and was then heard on the merits on a preliminary motion, it "consented" to the jurisdiction within Bankruptcy Act, § 23(b) (Comp. St. § 9607).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Consent.]

4. **Courts ⊗⇒284—Suit by trustee in bankruptcy is one "arising under laws of United States."**

Under Bankruptcy Act, §§ 47, 70a (Comp. St. §§ 9631, 9654), a trustee acquires the right and is charged with the duty to bring in his own name any action necessary to reduce to possession all the bankrupt's property, and such an action is one "arising under the laws of the United States" of which the federal courts are given general jurisdiction by Judicial Code, § 24(1) (Comp. St. § 991).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arise—Arising.]

5. **Courts ⊗⇒284—Suits by trustee are within jurisdiction of federal court except as limited by Bankruptcy Act.**

Where the Bankruptcy Act (Comp. St. §§ 9585-9656) confers on a trustee the right to sue, such a suit arises under the act and is within the jurisdiction given to federal courts by Judicial Code, § 24(1) (Comp. St. § 991), subject to the limitations imposed on such jurisdiction by the act itself.

---

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. Courts ☞258—Congress may limit jurisdiction conferred on federal courts.
The grant of judicial power to the federal courts by Const. art. 3, § 2, is permissive and not exclusive, and Congress may limit as it pleases the jurisdiction conferred thereunder.

7. Bankruptcy ☞293(4)—Jurisdiction of suit by trustee by consent of defendant is as between federal and state court.
The power given to a defendant in a suit by a trustee by Bankruptcy Act, § 23b (Comp. St. § 9607), to consent to the jurisdiction of the court, is intended to give him the right to consent to federal, as distinguished from state, court jurisdiction.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by James W. Lyons, trustee of Floyd J. Smith, bankrupt, against the Toledo Fence & Post Company. From an interlocutory order appointing a receiver, defendant appeals. Remanded for addition to record.

Charles A. Seiders, of Toledo, Ohio, for appellant.
Gustavus Ohlinger, of Toledo, Ohio, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. [1] This is an appeal from an interlocutory order appointing a receiver for the appellant corporation. The trustee in bankruptcy of Smith filed the bill in the court below, as commencement of a plenary suit against the corporation, alleging that Smith had been and was its chief and controlling stockholder and general manager; that it had become indebted to him upon various transactions to the amount of about $19,000 net balance; that more than four months before bankruptcy and with the intent to defraud his creditors, Smith had canceled and discharged this $19,000 debt (as to parts of it upon inadequate consideration and as to other parts upon none); that the corporation was in imminent danger of insolvency; and praying that the trustee have an accounting and a recovery of the full balance honestly due and that a receiver be appointed. There was no allegation that the corporation owed any debts except this one, or that its assets and business were being mismanaged to its prejudice. The record shows no affidavits in support of the application. Manifestly the mere facts that the bankrupt is the controlling manager and stockholder of the corporation, and that he has increased its apparent assets at his personal expense, do not tend to justify a receivership, taking the corporate management away from the directors. The order appointing the receiver recited that it appeared to the court "that the grounds for the appointment of a receiver set forth in the bill filed herein exist and that a receiver should be forthwith appointed." Recital in an order that the propriety of a receivership appeared to the court, even in the lack of any record showing how it appeared, is doubtless entitled to due weight in aid of the presumption that there was no error. Such effect is somewhat weakened in this case by the

accompanying reference to the dependence upon the insufficient allegations of the bill; but we think it unnecessary and inadvisable to determine, upon the present unsatisfactory record, the validity of the appointment. Counsel state that proof was taken in open court tending to support the order, and that the position then taken by defendant was such as to excuse more formal allegations or proof. An order will be entered directing that within ten days, or such brief further time as the district court may allow, the trustee may cause to be settled a narrative of the proof which was taken, and, if so advised, may amend his bill, with its prayer for receivership, so as to meet such proof, and that a supplementary return may then be made to this court, whereupon this question will be considered and decided.

However, the permitting of any further steps implies that the jurisdiction of the court below appeared by the bill, or could appear by some amendment which the facts will permit. The appellant denies the existence or the possibility of such jurisdiction; and this subject must therefore be met.

[2] The denial goes, first, to the jurisdiction of the court below as a court of equity; and rests upon the decision of this court in Warmath v. O'Daniel, 159 Fed. 87, 86 C. C. A. 277, 16 L. R. A. (N. S.) 414, to the effect that the remedy at law may be so adequate as to bar a proceeding in equity, even though a fraud is involved or a conveyance is to be set aside. This attack upon the equity jurisdiction of the court below must be overruled, for this, if for no other, reason: One of the transactions attacked as fraudulent was that by which the bankrupt had received from the corporation assets worth about $4,000, and in exchange had canceled a debt of about $10,000 from it to him. These assets could not now be returned, and a suitable credit on the debt must be made as an equitable condition of rescinding. Fixing the proper conditions of such a rescission is, to say the least, so far within the powers and peculiarly fit for the machinery of a court of equity that, even if the remedy at law were "adequate," that objection must be made at the first opportunity or it is waived. Here it was not made, so far as the record shows, until the assignments of error were filed; and then only vaguely.

The denial goes, second, to the jurisdiction of the court as a federal court. The argument is that when a suit is merely one by a trustee to recover by adverse proceedings a debt from defendant to the bankrupt, and where there is no diverse citizenship, a federal court has no jurisdiction. This result, in a case where there is no consent, is plainly required by Bankruptcy Act, § 23 (b) (Comp. St. § 9607), unless this case is within that provision, (e), of section 70 of the Bankruptcy Act (section 9654) which provides that—

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred. * * * For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

Whatever doubt may have existed as to whether the seeming effect of this grant of jurisdiction was limited by the apparently inconsistent restriction of section 23 (Harris v. Bank, 216 U. S. 382, 30 Sup. Ct. 296, 54 L. Ed. 528) has been removed by the 1910 amendment of section 23, bringing the two sections into harmony; and since the court below is a court of bankruptcy under section 1 (8) (section 9585), as well as the successor of the Circuit Court, it follows that there was jurisdiction, if the suit is one to recover from the person to whom it was transferred, property or its value, which had been transferred by the bankrupt to defraud his creditors. It is not to be doubted that the debt from the corporation to Smith was "property," capable of being transferred by conveyance or transaction which his creditors could avoid. Such difficulty as there is in the application of this statute, 70 (e), lies deeper. While it is said for the trustee that this action is one to recover "property so transferred," it is said in reply that such descriptive language is unfit and inappropriate to point out a mere release or discharge from the creditor to the debtor, where the action brought does not involve any third person to be bound or any evidence of debt to be reinstated or any conveyance which must be set aside; and that the fraudulent character of the cancellation is not the basis of such an action, but will be the reply when the defendant undertakes to set up the discharge as a defense. In other words, the trustee says the suit is to recover property fraudulently transferred; the defendant says that it is to recover property which never had been transferred.[1]

[3] We will not undertake to decide the question, because we think the jurisdiction sufficiently otherwise appears. It is to be inferred from the record that the defendant corporation received due notice of the filing of the bill and the application for receivership. It appeared before the court at the time fixed for the motion and obtained a postponement of the hearing to get time to complete an expected adjustment. Upon the adjourned day it reported that the adjustment had failed, and it then was heard as far as it desired upon the merits of the application. It made no objection to the jurisdiction of the court, but tacitly acquiesced therein. Such conduct is clearly a waiver of objection and a consent to the jurisdiction, unless the defects therein so pertain to subject-matter that they cannot be waived. Detroit Co. v. Pontiac Co. (C. C. A. 6) 196 Fed. 29, 32, 115 C. C. A. 663; Twin Lakes Co. v. Dohner (C. C. A. 6) 242 Fed. 399, 402, 155 C. C. A. 175. The question, therefore, is: With defendant's consent, under section 23 (b), can the trustee sue in a federal court to recover a debt due the bankrupt, where the amount is more than $3,000 but there is no diversity of citizenship?

[4, 5] By section 70 (a) the trustee becomes vested, by operation of

---

[1] In an action by administrators on a note to the intestate which he was said to have fraudulently discharged, and speaking of this discharge, Chief Justice Parker said: While it "was fraudulent, it left the note good and valid." Martin v. Root, 17 Mass. 222, at page 228.

law, with the entire title of the bankrupt to all his nonexempt property and rights of action, and thereby undoubtedly acquires the right, and under section 47 (section 9631) becomes charged with the duty, to bring in his own name any action which may be necessary to reduce to possession all the bankrupt's property, including debts due to the bankrupt. Under section 24 (1) of the Judicial Code (Comp. St. § 991), the District Courts have jurisdiction of all civil suits which arise under the Constitution or laws of the United States and where the matter in controversy exceeds $3,000. Under these provisions we cannot doubt that, if they alone were to be considered, the District Court of that district where the defendant might reside (or in certain cases be found) would have jurisdiction of an action by a trustee to recover a debt of more than $3,000 which had been due to the bankrupt. The action would be one arising under the laws of the United States, since the trustee would sue by virtue of a title created by the bankruptcy law. The trustee must allege and prove that valid proceedings were taken under the Bankruptcy Act, leading to a valid adjudication, whereby title passed, and that by valid proceedings under the act he was chosen as trustee. If the proof fails in any of these particulars, the suit fails. The suit is one step in the collection of assets in the execution of the Bankruptcy Act. That such a case would be one "arising under the laws of the United States" we think is the result of well-settled principles. It will be observed that under the constitutional limitations of the federal judicial power (article 3, sec. 2), and with exceptions not to this question important, Congress has no power to confer jurisdiction on the inferior federal courts excepting as to suits which do so arise; and every decision which upholds the right to sue in the federal court by one who merely acquires title through the operation of a federal law is therefore, by necessary implication, a holding that such a suit "arises under" federal laws. This is illustrated by the situation existing under the Bankruptcy Act of 1867 (14 Stat. 517). That act, as it was construed, expressly gave the trustee the right to sue in the federal courts regardless of whether the bankrupt could have sued there. An elaborate justification for vesting the federal courts with this complete jurisdiction is found in the decision of Mr. Justice Clifford, at the circuit, in Sherman v. Bingham, Fed. Cas. No. 12,762 (reversing Id., Fed. Cas. No. 12,733), and this discussion was adopted and approved by the Supreme Court in Lathrop v. Drake, 91 U. S. 516, 518, 23 L. Ed. 414. While the court discusses only the specific language of the act as bearing on the intent to confer jurisdiction, it is not to be supposed that the constitutional limitation of power was overlooked; and it clearly was the unquestioned assumption of that case that such suits by trustees were suits arising under the laws of the United States. Further illustration of this universal assumption is found in the present act. The jurisdiction expressly conferred, in derogation of state courts, by sections 60 (b) and 67 (e) (sections 9644, 9651), pertains to suits which arise under the federal laws because such cases involve a construction or application of those laws to the underlying rights of the parties, and call for finding and ascertaining the conditions of insolvency and preferential action covered by those sections, and hence do not furnish the illustration to

290 F.—41

which we refer; but the suits contemplated by 70 (e) in no way arise under the Bankruptcy Act, excepting because that act vests in the trustee certain existing rights of creditors. Therefore, the very presence of section 70 (e) in the Bankruptcy Act implies that where the trustee's right to sue is conferred by the act, such suit by him "arises under" the act, and hence is within the power of Congress to confide to a federal court—as it otherwise would not be—and also is within the grant of section 24 (1) of the Code.

When a national bank becomes insolvent, an administrator is appointed in the manner pointed out by the National Bank Act (13 Stat. 99), and is called "receiver." Upon the insolvency of a business corporation the National Bankruptcy Act tells how its administrator shall be appointed, and the man selected pursuant thereto is called "Trustee." A suit either by or against the receiver of a national bank is one "arising under the laws of the United States," not because any disputed question of construction or application need be involved, but because the federal law gives him the title and right to claim or to defend. Auten v. Bank, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920; Harriman Bank v. Seldomridge, 249 U. S. 1, 6, 39 Sup. Ct. 244, 63 L. Ed. 443. The decisions go upon the precise ground that a suit by him is one by an officer of the United States, and hence within a different specific clause of what is now section 24 (1) of the Code; but this specific grant of jurisdiction over suits by an officer of the United States depends, in turn, upon the constitutional grant of power as to cases "arising under"—and so the questions are the same.

The act creating the bank of the United States expressly authorized suits by the bank to be tried in a federal court; but in Osborn v. Bank, 9 Wheat. 738, 804, 818 (6 L. Ed. 204), the question of the constitutionality of this grant was argued and determined. The reasons why a suit by the bank was within the constitutional grant (and they apply as well to a suit by a trustee in bankruptcy), were stated by Messrs. Clay, Webster, and Sargeant, as follows:

"That Congress had constitutional authority to confer this jurisdiction on the Circuit Courts. It was 'a case arising under the Constitution and laws of the United States.' Every case, in which the bank of the United States is a party, is, in the strictest literal interpretation of the clause, a case arising under a law and the Constitution of the United States. But for the law, the case would never have existed; but for the continued existence of the law, it could not continue to exist; if, by any conceivable means, the law were to be determined, the case must be at an end. There is, therefore, an inseparable, indissoluble connection between the law and the case, as cause and effect; the case owes its being to the law, and only to the law."

While the court in its decision discusses also other features, Chief Justice Marshall seems to have adopted this view:

"The case of the bank is, we think, a very strong case of this description. The charter of incorporation not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is a law of the United States. This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States. It is not only itself the mere creature of a law, but all its actions and all its rights are dependent on the same law. Can a being

thus constituted, have a case which does not arise literally, as well as substantially, under the law?"

If there were otherwise doubt about the proposition that a suit brought by one who owes his existence to a federal law is a suit arising under that law, and it were claimed that Osborn v. Bank might be distinguished because the law there involved in terms authorized suit in federal courts, that doubt would be removed by the opinion in the Pacific Railroad Removal Cases, 115 U. S. 1, 11–14, 5 Sup. Ct. 1113, 29 L. Ed. 319. Justice Bradley discusses this supposed distinction and points out that a suit by a corporation which derives its existence from a law of the United States is necessarily a suit arising under that law. The doctrine was elaborately restated by Justice Van Devanter in Bankers Co. v. Texas & Pacific Ry., 241 U. S. 295, 305, 307, 36 Sup. Ct. 569, 60 L. Ed. 1010. It was at one time even thought that a suit by or against a receiver appointed by a federal court was a suit arising under federal laws; though the contrary was finally held in Gableman v. Peoria Co., 179 U. S. 335, 21 Sup. Ct. 171, 45 L. Ed. 220. This result was not reached, however, because of any modification of the principle which controlled the Osborn and the Pacific Railroad Removal Cases; but the court came to the conclusion that receivers were appointed by virtue of the general powers of any court of equity, and hence that the connection between the federal laws and the receiver's creation was too remote and incidental to justify putting such receivers in the class of those who take title directly through the federal laws.

We do not overlook that it was said by Chief Justice Fuller in Western Union Co. v. Ann Arbor Co., 178 U. S. 239, 243, 20 Sup. Ct. 867, 869 (44 L. Ed. 1052), that—

"When a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or laws of the United States, upon the determination of which the result depends, it is not a suit arising under the constitution or laws."

This has been often quoted or paraphrased, and it sometimes seems to have been thought to call for an actual disagreement between the parties as to the construction or effect of the federal law. Perhaps its broad language suggests that thought, but it cannot be so intended. The jurisdiction of the court cannot be ousted because the defendant concedes the original federal right and pleads only a discharge or other wholly nonfederal defense. A suit by a federal officer, or a national bank receiver, or a corporation of federal creation, may in truth involve no dispute whatever about any question of federal aspect; but the jurisdiction has never been for that reason doubted. The quoted phrase must be intended to apply not merely to cases where a dispute about the meaning or effect of the federal law has actually materialized, but also to cases where such dispute inherently lurks and must be tacitly passed over or decided before coming to the real quarrel. It has found chief application, early and late (Shoshone v. Rutter, 177 U. S. 505, 507, 20 Sup. Ct. 726, 44 L. Ed. 864; Shulthis v. McDougal, 225 U. S. 561, 569, 32 Sup. Ct. 704, 56 L. Ed. 1205), in cases where land titles originated under federal law; and it is there only another application of the rule of Gableman v. Peoria, supra, that a remote con-

nection with federal law is not sufficient. The Supreme Court, speaking by the same justice, in Bankers' Co. v. Texas Pacific Railway, supra, did not intend to overrule the principle which it had applied in Shulthis v. McDougal, supra; it did not perceive any inconsistency. Illustration, that an active dispute as to construction is not necessary is furnished by recent statutes, of which the Safety Appliance Act (Comp. St. §§ 8605–8623) and the Employers' Liability Act (Comp. St. §§ 8657–8665) are instances. The right of action depends in some measure on these statutes, but the parties may all agree as to the construction and effect of the law and may litigate only the amount of damages or the validity of a release; nevertheless, there is federal court jurisdiction.

Nor do we fail to observe Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, Spencer v. Duplan Co., 191 U. S. 526, 24 Sup. Ct. 174, 48 L. Ed. 287, Bush v. Elliott, 202 U. S. 477, 26 Sup. Ct. 668, 50 L. Ed. 1114, and Lovell v. Newman, 227 U. S. 412, 33 Sup. Ct. 375, 57 L. Ed. 577. These cases, in considering the present bankruptcy law, hold, in one form or another, that the trustee is not entitled to sue in the federal court merely because he is trustee in bankruptcy. These cases all say this as the result of their consideration and application of the limitations of section 23, and they have no bearing upon the question we are considering, viz., whether there would be such jurisdiction if these limitations were absent.

[6] From this review we are compelled to think that, if there were no restrictive provisions in the Bankruptcy Act, the federal courts would have that measure of jurisdiction over suits by a trustee to recover debts due the bankrupt, which is given by section 24 of the Code as to suits arising under the laws of the United States, just as was concluded in Bankers' Co. v. Texas & Pacific Railway, supra, 241 U. S. at pages 305, 307, 36 Sup. Ct. 569, 60 L. Ed. 1010, regarding what would have been the rule as to federal corporations except for the express limitation; but it is well settled that the constitutional grant of power over such suits is permissive and not exclusive, and that Congress may limit as it pleases the jurisdiction which it confers thereunder. For example, it has taken away by amendment to section 24 (1) the power which that section formerly granted, as construed in the Pacific Railway Cases, to a corporation created by the federal laws to bring suit for that reason in the federal courts (section 5, Act of January 28, 1915; 38 S. L. 804). It also, by the National Bank Act, specifically restricted the otherwise general federal court jurisdiction of all cases by or against national banks. Cases like Herrmann v. Edwards, 238 U. S. 107, 35 Sup. Ct. 839, 59 L. Ed. 1224, are not inconsistent with, and indeed rather imply, the idea that there would be federal court jurisdiction except for the restrictive provisions which such cases interpret and apply. For further example, Congress has limited by section 23 of the Bankruptcy Act the otherwise broad right of the trustee to bring certain suits in the federal court, and again in the same section has modified or partially neutralized that limitation by the exception referring to defendant's consent. Plainly, we have here (1) a broad power (2) a limitation, and (3) an exception to the limitation. Whatever is within the exception (3), remains within the broad power

(1). We must conclude, then, that Congress had the power to permit actions by trustees in federal courts, and must come to the intent of Congress in its reference to a defendant's consent.

[7] This power of waiver or of consent given to a defendant might have been intended to refer to a choice between a state and federal court, or to a choice involving only a matter of venue as between two courts. Two considerations are persuasive against the latter of these views. The first is that if the choice referred to is a matter of local venue, it must extend to alternative state courts; and this goes into a field where Congress would not have intended to intrude. It would amount to an attempt to create by consent in some state court a jurisdiction which the practice of that state might forbid. The second such consideration is that if the consent is to be applied as between two districts in the federal practice, the provision is wholly ineffective, because the defendant already, under the federal practice, could waive any objection to the particular district in which he was sued.

Quite aside from both these considerations, we think the familiar history of this section and its well-known purpose, evidenced by the very title of the section, teach that the consent referred to was to be a consent to federal as distinguished from state court jurisdiction. One of the greatest objections to the act of 1867, and one of the chief causes of its repeal, was the wide spread complaint of the generality of jurisdiction given to the federal courts. The purpose of the restrictions in section 23 in the present act was to avoid these objections, and to insure that one made a defendant in an action by a trustee upon an adverse claim should not be forced away from his home to a distant federal court; but the general and recognized advantages of having all such suits in a court of bankruptcy remained; and it seems to us the natural inference that Congress had no purpose to destroy or deny that jurisdiction in cases where the defendant agreed with the trustee that the federal court was the preferable one. Congress was deciding how far the underlying and otherwise existing jurisdiction of the federal courts should be taken away, and we should suppose its intent was for that jurisdiction to remain whenever the defendant was satisfied to have it so.

We could have no doubt of this conclusion or the existence of this consent jurisdiction, were it not for what is said in the opinion of Mr. Justice Day, in Lovell v. Newman, supra, at page 426 of 227 U. S., at page 380 of 33 Sup. Ct. (57 L. Ed. 577). He said:

"Furthermore, the consent provided for in section 23b certainly was not intended to enlarge the jurisdiction of the Circuit Courts of the United States so as to give them a jurisdiction which they would not have because of diverse citizenship and a requisite amount in controversy or by reason of a cause of action arising under the Constitution or laws of the United States."

This statement is, of course, literally accurate, because Congress doubtless did not intend to, and it had no constitutional power to, give a jurisdiction which did not depend upon diverse citizenship, or involve a suit arising under the laws of the United States. On the other hand, the provision as to consent must have been intended to work some enlargement, since there is a grant and a limitation and an exception to the limitation; and the exception necessarily enlarges the net

effect of the grant. The pertinence of the quotation to the present inquiry lies in the seeming implication that an action by the trustee, generally speaking, is not one arising under the laws of the United States, and hence that jurisdiction could not be given by consent. Justice Day had himself said in Harris v. Bank, supra, at page 383, of 216 U. S., at page 297 of 30 Sup. Ct. (54 L. Ed. 528), that the district court "could, by the consent of the defendant, and not otherwise, entertain" such suits, thus interpreting the seeming assumption to the same effect as in Bardes v. Bank, 178 U. S. 524, at page 538, 20 Sup. Ct. 1000, 44 L. Ed. 1175. The facts in the Lovell-Newman Case did not require any decision of the broad question. The consent contemplated by section 23 (b) would seem to be one given, at the earliest, after bankruptcy, so that it could be intelligently made with specific reference to the suit which the trustee was about to bring or had brought. The consent involved in the Lovell-Newman Case was not of that character, but had been given before bankruptcy and before any controversy arose, and also was practically ineffective because given in a contract between citizens of different states where federal jurisdiction existed without consent. The citation of Bush v. Elliott does not indicate an intent to pass specifically upon the effect of consent, for in that decision (202 U. S. 477, at page 478, 26 Sup. Ct. 668, 50 L. Ed. 1114) it appeared that there had been no consent and there is nothing to intimate that consent would not have been effective. Hence, we are not inclined to think that Lovell v. Newman should be interpreted as deciding that, in proper cases, the defendant's consent may not be operative in waiving that objection to the jurisdiction of the federal court which he might otherwise make under section 23.

We must observe, too, the not uncommon practice by which adverse parties, who are entitled under section 23 to insist that they be sued only in the state court, have voluntarily appeared and submitted their rights to the federal district court in a plenary suit by the trustee, thus joining in the common endeavor to get a speedy decision of all questions by one court. It would seem unfortunate if it must be held that such submissions to the jurisdiction have been ineffective.

These views, which are those of a majority of this court, are announced for the guidance of the trial court. The form of the order to be entered will be determined when the matter of perfecting the record is completed.