**CENTRAL REPUBLIC BANK & TRUST CO. et al. v. CALDWELL et al.**

Nos. 9309, 9295.

Circuit Court of Appeals, Eighth Circuit.

April 22, 1932.

"Rehearing denied June 17, 1932.

Dean E. Terrill, of Chicago, Ill. (Perry M. Chadwick, of Chicago, Ill., and James H. Harkless and Clifford Histed, both of Kansas City, Mo., on the brief), for appellants.

William G. Boatright, of Kansas City, Mo. (James A. Reed, I. J. Ringolsky, Harry L. Jacobs, Charles P. Woodbury, Paul Kelly, and Phineas Rosenberg, all of Kansas City, Mo., on the brief), for appellees.

Before STONE, and BOOTH, Circuit Judges, and WYMAN, District Judge.

BOOTH, Circuit Judge.

There are here two appeals; one allowed by the District Court, and one allowed by this Court, both covering the same matter, the duplication being precautionary. The appeals are from an order of the trial court denying the petition of the appellants, interveners in a bankruptcy proceeding, to set aside or modify an order theretofore made in said bankruptcy proceeding appointing a receiver and directing him to take possession and manage properties of the bankrupt, including property upon which appellants, as trustees, held a mortgage.

We think that the facts (which will be set out presently) clearly show that the matter in dispute in the lower court constituted a controversy arising in bankruptcy proceedings, as distinguished from a proceeding in bankruptcy. Houghton v. Burden, 228 U. S. 161, 165, 33 S. Ct. 491, 57 L. Ed. 780; Taylor v. Voss, 271 U. S. 176, 180, 46 S. Ct. 461, 70 L. Ed. 889; Hopkins v. National Shawmut Bank (C. C. A.) 293 F. 884; Foster v. McMasters, 15 F.(2d) 751 (C. C. A. 8); Clark v. Huckaby, 28 F.(2d) 154, 67 A. L. R. 1456 (C. C. A. 8); Quinn v. Gardner, 28 F.(2d) 270 (C. C. A. 8).

Appeal was rightly taken, therefore, under subdivision a of section 24 of the Bankruptcy Act (11 USCA § 47(a), and was properly allowable by the District Court.

Houghton v. Burden, supra; Quinn v. Gardner, supra; Nixon v. Michaels, 38 F.(2d) 420, 422 (C. C. A. 8); In re Bell Motor Co., 45 F.(2d) 19, 25 (C. C. A. 8); General Orders in Bankruptcy XXXVI (11 USCA § 53).

The matter will accordingly be heard in this court on that appeal. The appeal allowed by this court is dismissed.

The main facts and proceedings leading up to the order appealed from are substantially as follows:

"Municipal Telephone and Utilities Company is a corporation organized and existing under the laws of the State of Delaware, having had its principal place of business within the Western District of Missouri for the greater portion of six months preceding June 17, 1931, the date of the filing of the involuntary petition in bankruptcy against said company.

"Municipal Utility Investment Company is a corporation organized and existing under the laws of the State of Missouri and having had its principal place of business and its domicile within the Western District of Missouri for the greater portion of six months preceding June 18, 1931, the date of the filing of the involuntary petition in bankruptcy against said company.

"Municipal Utility Investment Company is the owner of all of the voting stock of the following named corporations:

"1. Municipal Telephone and Utilities Company, a Delaware corporation.

"2. The Municipal Utility Investment Company of Kansas, a Kansas corporation.

"3. Municipal Utility Investment Company, an Illinois corporation.

"4. Western Bond & Share Company, an Oklahoma corporation.

"5. Commonwealth Public Service Company, a Delaware corporation.

"Municipal Telephone and Utilities Company is the owner of all of the voting stock of the following named corporations:

"1. Associate Utilities, Inc., an Arkansas corporation.

"2. Kentucky State Telephone Company, a Delaware corporation.

"3. North Central Telephone Company, a Missouri corporation.

"4. Continental Telephone Company, an Oklahoma corporation.

"5. The Southern Kansas Utilities Company, a Kansas corporation.

"6. The Gas Utilities Company, a Kansas corporation.

"7. Commonwealth Engineering and Management Company, a Delaware corporation.

"Associated Utilities, Inc. is the owner of all of the voting stock of the following corporations:

"1. Commonwealth Public Service Company of Oklahoma, a Delaware corporation.

"2. Arkansas Electric & Water Company, a Delaware corporation.

"3. General Utilities Service Corporation, a Delaware corporation.

"On the 16th day of June, 1931, in a proceeding brought by A. C. Maxwell against said Municipal Telephone and Utilities Company, in Equity No. 1671, in the District Court of the United States for the Western Division of the Western District of Missouri, Harry L. Donnelly was appointed receiver of said Municipal Telephone and Utilities Company; that on said date, in a proceeding brought by A. C. Maxwell against said Municipal Utility Investment Company, No. 760,298, in the Circuit Court of Jackson County, Missouri, at Independence, Henri L. Warren and Ed H. Gill were appointed receivers of said Municipal Utility Investment Company; that on said date, in a proceeding brought by Harry E. Snyder against said Commonwealth Public Service Company of Oklahoma, No. 69,208, in the District Court of Oklahoma County, Oklahoma, T. B. Mumma was appointed receiver of said Commonwealth Public Service Company of Oklahoma; that on said date, in a proceeding brought by Harry E. Snyder against said Kentucky State Telephone Company, No. 2119, in the Circuit Court of Bracken County, Kentucky, J. W. Byrne was appointed receiver of said Kentucky State Telephone Company; that on or about said date, in a proceeding brought by Harry E. Snyder against said North Central Telephone Company, No. 76,296, in the Circuit Court of Jackson County, Missouri, at Independence, John P. Gordon and Baylis Steele were appointed receivers for said North Central Telephone Company; that on said date, in a proceeding brought by Harry E. Snyder against said Continental Telephone Company, No. 69,202, in the District Court of Oklahoma County, Oklahoma, T. B. Mumma was appointed receiver for said Continental Telephone Company; that on said date, in a proceeding brought by H. E. Snyder against said The Gas Utilities Company, No. 46,252, in the District Court of Shawnee County, Kansas, Paul H. Heinz was appointed receiver of said The Gas Utilities Company; that on the 15th day of June, 1931, in a proceeding brought by Harry E. Snyder against said Associated Utilities, Inc., No. 764, in the Jackson Chancery Court of Arkansas, Z. M. McCarroll was appointed receiver for said Associated Utilities, Inc.; that each of said receivers took charge and custody of part of the assets and property of the alleged bankrupt; that each of said receivership proceedings was induced by the alleged bankrupt and said subsidiary corporations and each of said receivers was appointed by and with the consent of the alleged bankrupts and their said subsidiary corporations."

The involuntary petition in bankruptcy against the Municipal Telephone & Utilities Company, filed June 17, 1931, alleged, among other things, that the company is "principally engaged in the business of owning and operating telephone lines, telephone switchboards and telephone companies and generally engaged in the business of owning and operating telephone public utilities and dealing in stocks and bonds of such telephone companies." It further alleged:

" * * * that the alleged bankrupt carries on and operates its business through the means of wholly owned subsidiary corporations, which corporations are, in fact and in law, mere agencies, departments, bureaus, branches, adjuncts and parts of the alleged bankrupt and of its business and property; that some of such wholly owned subsidiaries are The Associated Utilities Inc. of Arkansas, The Kentucky State Telephone Company, the Southern Kansas Utilities Company, The Gas Utilities Company of Kansas, the Continental Telephone Company of Oklahoma, The North Central Telephone Company of Missouri and Municipal Utility Investment Company of Delaware; that each and all of said subsidiary corporations, although organized under the laws of various states, have had their principal place of business for the six months period next preceding the date of the filing of this petition in Kansas City, Jackson County, Missouri, and in the same offices as the alleged bankrupt; that said wholly owned subsidiaries have the same officers, directors, management, agents and representatives as the alleged bankrupt; that the property and assets of the alleged bankrupt and of each of said wholly owned subsidiaries has been intermingled and is a part of the property and assets of the alleged bankrupt. * * * * "

On the same day, June 17, 1931, a petition for the appointment of a receiver was filed in the bankruptcy proceeding. This petition repeated many of the allegations of the involuntary petition in bankruptcy, and also alleged:

"* * * that the business and property of the alleged bankrupt and the business and property standing in the name of or carried on in the name of said wholly owned subsidiaries constitute and is, in law and in fact, but one business and property; that the liabilities of the alleged bankrupt and of each and all of said subsidiary corporations are liabilities and claims existing against the entire property and business and are due from and owing by the alleged bankrupt.

"That some of such wholly owned subsidiaries of the alleged bankrupt are the following corporations:

"The Associated Utilities Inc. of Arkansas, The Kentucky State Telephone Company, the Southern Kansas Utilities Company, The Gas Utilities Company of Kansas, The Continental Telephone Company of Oklahoma, The North Central Telephone Company of Missouri and Municipal Utility Investment Company of Delaware. * * *

"* * * That the appointment of numerous receivers and by different courts and in different proceedings, all relating to the same property, assets and estate necessarily will involve improper and great and unnecessary expense and will cause unnecessary confusion and conflicts between the receivers and between the courts appointing them as to the property and assets of the alleged bankrupt and of such subsidiary corporations, all to the injury and detriment of your petitioners and of other creditors of the alleged bankrupt and such wholly owned subsidiaries; that such numerous receivers will and do create a condition of waste and injury to the estate.

"That the assets, property and business of the alleged bankrupt and such wholly owned subsidiaries are of a character as to be perishable within the meaning of the Bankruptcy Act and the General Orders in bankruptcy; that it is absolutely necessary, for the preservation of the estate, that a receiver or receivers be appointed in bankruptcy to take charge of all the assets and property of the alleged bankrupt and of all of said wholly owned subsidiaries.

"That such receiver or receivers should be directed and authorized to commence ancillary proceedings in bankruptcy in such courts as may seem to them proper and necessary for the obtaining of possession and the protection of the property and assets of the estate."

On June 26, 1931, the alleged bankrupt filed a response to the petition for a receiver. The response consisted largely of denials of the allegations above quoted from the petition in involuntary bankruptcy and from the petition for the appointment of a receiver in bankruptcy.

On July 2, 1931, the alleged bankrupt filed an answer to the petition in involuntary bankruptcy, in which it denied the allegations above quoted from the said petition.

The petition in involuntary bankruptcy against the Municipal Utility Investment Company, above mentioned, is not contained in the record; but that proceeding was consolidated with the bankruptcy proceeding against the Municipal Telephone & Utilities Company by the same order of court, dated July 8, 1931, which appointed the receiver in bankruptcy.

The petition for the appointment of a receiver in bankruptcy was heard on July 8, 1931. Appearances were made by the petitioning creditors; by the alleged bankrupts; by their subsidiary corporations named in the order; by the receiver in equity of the alleged bankrupt, Municipal Telephone & Utilities Company; and by various creditors.

Evidence had already been taken pursuant to section 21a of the Bankruptcy Act (11 USCA § 44(a).

The order appointing the receiver in bankruptcy was made, being dated July 8, 1931, and filed July 9, 1931. Among the recitals in the order is the following: "And the alleged bankrupts and said subsidiary corporations consenting in open court to the appointment of a receiver and the court being fully advised in the premises, finds." The court found the corporate character of the alleged bankrupts and their subsidiary corporations, as heretofore set out.

The court further found: "That each and all of said corporations above enumerated, owned by the said alleged bankrupts and/or their subsidiary corporations, have had their respective principal offices and places of business and/or domiciles within the territorial jurisdiction of this court for the greater portion of six months next preceding the date of the filing of said involuntary petitions in bankruptcy; that each of said subsidiaries has had its office and kept its principal books and records in the same office with the alleged bankrupts; that each of said subsidi-

ary corporations have substantially the same officers and directors as the alleged bankrupts; that the business, affairs, property and assets of the alleged bankrupts and all of said subsidiary corporations are under the control, management and direction of the same persons and are mingled and intermingled; that the alleged bankrupts are engaged in the business of owning and operating telephone lines, telephone exchanges, electric power lines and power plants, water pipe lines and water plants, ice plants, gas pipe lines and gas wells; that the alleged bankrupts carry on their said business through and by the means of said subsidiary corporations, which subsidiary corporations have been treated, used, operated and conducted as departments, agents, adjuncts, bureaus and parts of the alleged bankrupts; that the business, affairs, property and assets of the alleged bankrupts and of each of said subsidiary corporations has been treated, handled, used, operated, conducted and carried on as one business under one management; that the income of the alleged bankrupts and said subsidiary corporations has been deposited and mingled in one fund and bank account; that the accounts payable of the alleged bankrupts and said subsidiary corporations have been paid out of one general fund and bank account arising from the income of the alleged bankrupts and said subsidiary corporations; that the petitioning creditors are creditors of the alleged bankrupts and said subsidiary corporation and are entitled to look to all of the property and assets of the alleged bankrupts and of each of said subsidiary corporations for payment of their claims, and that all of said corporations above enumerated in fact constitute and are but one unified, intermingled and commingled business; that the alleged bankrupts and their said subsidiary corporations are not municipal, railroad, insurance or banking corporations as mentioned in the Bankruptcy Act of 1898, as amended, and are monied, business or commercial corporations and subject to be adjudicated involuntary bankrupts."

The court further found: "That it is absolutely necessary and to the best interests of the alleged bankrupts and their said subsidiary corporations and all creditors and other interested parties that a receiver in bankruptcy should be appointed in these proceedings prior to adjudication, to the end that the multiple receivership proceedings aforesaid may be ended and terminated and that all of the assets and property of the alleged

bankrupt and their said subsidiaries may be brought under one jurisdiction and in one proceeding, all of which being in the interest of economy and the preservation of the assets of the said alleged bankrupts."

Among other things, the order directed the receiver to take possesion of all the assets of the alleged bankrupts wherever located, including those standing in the name of the Kentucky State Telephone Company and other subsidiary corporations; directed the carrying on of the business theretofore conducted in the names of the subsidiary corporations; restrained all persons from bringing suits against the alleged bankrupts and the subsidiary corporations; authorized the receiver to commence ancillary proceedings in other courts; and reserved jurisdiction over the parties and the subject-matter for the making of further orders.

The form of the order was approved by the attorney for the alleged bankrupts and each of the subsidiary corporations, and by the attorneys for the receiver.

### The Suit in the Kentucky State Court.

Meanwhile, in the suit in the Kentucky state court, in which the bill of complaint was filed June 16, 1931, an answer by the Kentucky State Telephone Company had been interposed; and a receiver had been appointed for that company on June 16, 1931.

On July 2, 1931, the Central Trust Company of Illinois (predecessor of Central Republic Bank & Trust Company) and Arthur T. Leonard, as trustees under a certain mortgage made by the Kentucky State Telephone Company, and covering properties belonging to it, filed in the Kentucky state court an intervening petition for leave to foreclose said mortgage.

The petition of the trustees also prayed for the appointment of a receiver of the properties of the Kentucky State Telephone Company pending the foreclosure of the mortgage.

The Kentucky state court granted the petition of the trustees to the extent of appointing as receiver the same receiver who had theretofore been appointed in the creditor's suit. All other questions were reserved for future consideration.

It may be well to examine a little more closely the character of the equity suit which had been brought against the Kentucky State Telephone Company in the state court of Kentucky, and in which the trustees of the mortgage had intervened. It was a creditor's

bill brought by the creditor on behalf of himself and other creditors similarly situated. It set out the assets and liabilities of the company, and alleged that, although the assets greatly exceeded the liabilities, yet the company was unable to meet its maturing obligations. It further set out the existence of the mortgage to the Central Trust Company of Illinois and another, and the amounts of bonds outstanding, and the amounts of gold notes outstanding secured by pledge of some of said bonds. It further set out the existence of unsecured creditors, and that some of these had commenced attachment suits and seized property belonging to the Kentucky State Telephone Company. It further set out the necessity for the appointment of a receiver to conserve the assets of the company. It prayed for the appointment of a receiver with power to carry on the business; a sale of the assets of the company, if found necessary, and a distribution of the proceeds among its creditors; and an injunction to prevent all persons from interfering with the receiver's taking possession of the property.

The suit was clearly one in the nature of a winding up proceeding.

The foregoing presents in outline the situation with which the bankruptcy court in the Western district of Missouri was confronted at the time when the appellants presented their intervening petition in the bankruptcy proceeding on July 31, 1931, praying for a modification of the order of July 8, 1931, appointing the receiver in bankruptcy, in so far as the order affected the Kentucky State Telephone Company.

### The Intervening Petition.

The intervening petition, which was filed by leave of court, set out that several years earlier the Kentucky State Telephone Company had executed its deed of trust to secure an issue of bonds which were outstanding; that default had occurred, and, under the terms of the deed of trust, the trustees had declared the entire debt due, and had intervened in the Kentucky receivership proceeding for purposes of foreclosure; and that a receiver had been appointed therein for the purposes of possessing the mortgaged property and impounding the income which was covered by the mortgage; and that they desired to proceed with such foreclosure, but were prevented by the injunction provisions of the order appointing the receiver in bankruptcy.

As grounds for modifying the order appointing the receiver in bankruptcy so as to permit them to proceed in the Kentucky receivership case, the intervening petition alleged the following: That the Kentucky State Telephone Company is not a subsidiary of the alleged bankrupt; that the alleged bankrupt does not carry on its business by means of the Kentucky State Telephone Company, nor has it treated such company as a department, agent, adjunct, bureau, or part of the alleged bankrupt, nor under one management, nor has it mingled or confused or destroyed the identity of the income or funds of the Kentucky State Telephone Company; that the accounts of the Kentucy State Telephone Company have been separately kept and maintained, and that the Kentucky State Telephone Company has independently operated its own business in every respect; that, if there has been mingling of assets, property, or income of the Kentucky State Telephone Company with that of the alleged bankrupt or of the other alleged subsidiaries, such has been wrongfully done and can be readily separated by accounting; that the creditors of the Kentucky State Telephone Company have properly relied upon the assets of that company, which is not insolvent, and have a first claim thereon; that the alleged bankrupt had no interest in the stock of the Kentucky State Telephone Company earlier than August 7, 1930, by which time it had acquired the outstanding voting stock thereof; that the interveners had filed their foreclosure proceedings prior to the filing of any bankruptcy proceedings in the proper United States District Court in Kentucky; that the present bankruptcy proceeding in Missouri is not a proper proceeding wherein to move for an adjudication of bankruptcy against the Kentucky State Telephone Company; that, if it should be necessary for interveners to obtain a deficiency decree, irreparable injury would result to them through having to share the unmortgaged assets of the Kentucky State Telephone Company with the creditors of the alleged bankrupt; that the jurisdiction of the Kentucky state proceeding is prior and superior to that of the bankruptcy court in Missouri; that there is no jurisdiction in the present cause to pass upon the controversy presented by the intervening petition in a summary manner, but that such can be litigated only in a plenary suit in the court having the actual custody and right to possession of the mortgaged property, which court is the Kentucky state court; that the action of the Kentucky State Telephone Company in appearing by

its counsel and consenting to the receivership in the bankruptcy proceeding was improper and invalid.

The prayer of the intervening petition was that the petitioners be allowed to file their intervening petition, and that the petitioning creditors, the alleged bankrupt, the Municipal Telephone & Utilities Company, the Kentucky State Telephone Company, and the receiver in bankruptcy, be ordered to file their answer within a short date to be fixed by the court; that the order appointing the receiver in bankruptcy be modified and vacated in so far as the receivership was extended to the Kentucky State Telephone Company's property and assets; that the receiver be instructed to prosecute no further his ancillary proceeding filed in the United States District Court in Kentucky for the purpose of gaining possession of said property; that the order restraining petitioners from prosecuting their suit in the state court of Kentucky be modified; and that leave be granted the petitioners, as trustees, to continue the prosecution of their foreclosure suit in said Kentucky state court.

An order was filed July 31, 1931, allowing the filing of the intervening petition.

Hearing was had on the issues presented by the intervening petition, and the various parties interested were called upon to present their evidence. The interveners, the receiver in the bankruptcy proceedings, and the petitioning creditors did so. Certain of the facts were stipulated. Documentary evidence and oral testimony were introduced.

On August 15, 1931, the bankruptcy court filed its order, dated August 13, 1931, denying the prayer of the intervening petition for a modification of the order of July 8, 1931. In this order of August 15, 1931, the court said:

"Upon the oral argument it was frankly admitted both by the attorneys for the receiver and the attorneys for the intervening petitioners that whether the original order should be modified as prayed by the interveners depended on the answer to this question of fact; was the Kentucky State Telephone Company at the time of the institution of bankruptcy proceedings against the Municipal Telephone and Utilities Company an entirely separate and distinct entity or was it only an agency and instrumentality of the Municipal Telephone and Utilities Company?

"If the true character of the Kentucky company was that last mentioned then its property and assets were for the purposes of administration in bankruptcy the property and assets of the Municipal Telephone and Utilities Company. From the time of filing of the bankruptcy petition all of the property and assets of the latter, including the property immediately held by the Kentucky company, were in custodia legis of the bankruptcy court and might be taken over by summary proceedings unless then held in adverse possession by another.

"The Kentucky company not only does not assert a separate and distinct entity but has joined in asking a single receivership on the theory that it is a mere subsidiary and agency of the Municipal Telephone and Utilities Company. The facts in evidence fully support that theory and that finding as embodied in the original order appointing the receiver.

"With the issue of fact so determined, this court of bankruptcy was in constructive possession of the assets of the Kentucky company from the time of the filing of the petition in bankruptcy. The subsequent appointment [of a receiver] by the Kentucky state court upon the intervening petition (in the Kentucky court) of these intervening petitioners could not have changed that situation. That receiver was not *at the time of the filing of the bankruptcy petition* in adverse possession of the assets of the Kentucky company.

"The prayer of the intervening petitioners for a modification of the order heretofore made is denied. It is so ordered."

### The Present Appeal.

From this order of August 15, 1931, the present appeal, which we will now consider, was allowed by the trial court.

■ The scope of the review upon the appeal, which, as has been stated, is under section 24a of the Bankruptcy Act (11 USCA § 47 (a), extends to both the law and the facts. Remington on Bankruptcy (3d Ed.) § 3742; 7 C. J., p. 432, § 772; Houghton v. Burden, supra; Dodge v. Norlin, 133 F. 363 (C. C. A. 8); In re McKenzie, 142 F. 383 (C. C. A. 8); In re B. & R. Glove Corp. (C. C. A.) 279 F. 372, 375; In re Taub (C. C. A.) 7 F. (2d) 447, 450; Daniels & Fisher Stores Co. v. Gregg, 9 F.(2d) 43 (C. C. A. 8); In re Gubelman (C. C. A.) 10 F.(2d) 926.

■ At the outset we are met by the contention of appellees that appellants, interveners, are coming into equity and attacking the order of the court made July 8, 1931, and that such an attack is forbidden by Equity Rule 37 (28 USCA § 723). The portion of the

rule here invoked reads as follows: "Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

Conceding, but without deciding, that Equity Rule 37 is applicable to bankruptcy matters such as the one at bar [see Remington on Bankruptcy (3d Ed.) § 31; International Harvester Co. v. Carlson, 217 F. 736, 739 (C. C. A. 8); In re Cunney (D. C.) 225 F. 426; In re Hughes (C. C. A.) 262 F. 500; In re Fosgate (D. C.) 268 F. 985; Bradley v. Huntington (C. C. A.) 277 F. 948, 950; In re Kenney, etc. (D. C.) 23 F.(2d) 681]; yet we think there has been no violation of its provisions in the instant case. The "main proceeding" here is the bankruptcy proceeding against the Municipal Telephone & Utilities Company. This is not challenged by the intervention. The propriety of seeking to adjudicate that company a bankrupt is not questioned; nor is the propriety of appointing a receiver in bankruptcy for the property of that company questioned. What the interveners do challenge is the jurisdiction of the bankruptcy court to administer in the bankruptcy proceedings against the Municipal Telephone & Utilities Company property which the interveners allege is not part of the estate of that company. Such challenge does not violate Equity Rule 37.

### Questions of Jurisdiction.

We are next met by the contention of appellants that the trial court, in passing upon the question whether the Kentucky State Telephone Company was merely an agency and instrumentality of the Municipal Telephone & Utilities Company, exercised summary jurisdiction and thereby committed error. The argument in support of this contention contained in the brief of appellants sometimes seems to be directed to the jurisdiction exercised by the bankruptcy court in making the order of July 8; sometimes to the jurisdiction exercised in making the order of August 15. So far as the argument is directed against the order of July 8, it may be quickly disposed of. Nowhere in the petition of intervention is there any allegation that the bankruptcy court, in making the order of July 8, exercised summary jurisdiction; and, in so doing, erred. No such ground was urged as a basis for modification of the order.

It is more than doubtful whether such ground could have been properly urged in the court below on the hearing of the petition in intervention. But conceding, without deciding, that it could have been urged, it is clear in our judgment that, not having been urged in the court below, it cannot be urged on this appeal.

A hearing as to the merits of the order of July 8 was all that was asked by the interveners in their petition; and such a hearing was therefore all to which they were entitled.

The interveners, having been allowed to come into the bankruptcy proceeding, are not, simply because of that fact, at liberty to attack the jurisdiction of the bankruptcy court to make orders which were entered prior to the intervention; no such purpose having been indicated in the petition of intervention, and no claim being made that fraud was practiced to induce the court to make such prior orders. Such limitation on interveners' action is independent of the provision of Federal Equity Rule 37. 17 Am. & Eng..Encyc. of Law (2d Ed.) 185; 11 Encyc. Pl. & Pr. 509; 21 C. J., p. 346, § 349; Swift v. Black Panther, etc., Co., 244 F. 20, 29 (C. C. A. 8); Commercial Electrical Supply Co. v. Curtis, 288 F. 657 (C. C. A. 8).

In the Commercial Electrical Supply Co. Case, this court said (page 659 of 288 F.): "It is the general rule that one who voluntarily intervenes in a suit in equity thereby becomes a party to the suit, is in the same situation, bound by the same orders and decrees, and subject to the same estoppels, as though he had been a party from the commencement thereof."

We shall accordingly not further consider interveners' attack upon the jurisdiction of the bankruptcy court to make the order of July 8, 1931.

But another contention of appellants is that the bankruptcy court exercised summary jurisdiction in hearing the petition in intervention and in denying the same by the order of August 15, 1931, and thereby committed error.

The intervening petition alleges that the controversy presented by the said petition can be litigated only in a plenary suit in the court having the actual custody and right to possession of the mortgaged property (evidently meaning the Kentucky state court); yet the interveners, in their petition, did not ask of the bankruptcy court in Missouri leave to bring a plenary suit in the Kentucky state court against the receiver in bankruptcy to have determined the right of such receiver to the possession of assets standing in the name of the Kentucky State Telephone Com-

pany; nor did the interveners ask the bankruptcy court in Missouri to direct its receiver to bring a plenary suit in the state court of Kentucky to determine his right to the possession of the assets standing in the name of the Kentucky State Telephone Company.[1] Instead of making such requests, the interveners assert in their petition that they should "be allowed to present fully *herein* [evidently meaning the bankruptcy court] the facts in connection with the ownership of property in the conduct of business by said Kentucky State Telephone Company." The prayer of the intervening petition was framed accordingly.

The relief prayed is consistent with and could result only from a determination of the merits of the pleaded adverse claim and adverse possession. The court could not grant the relief prayed without determining whether or not the property and assets of the Kentucky State Telephone Company were a part of the estate of the alleged bankrupt. The interveners voluntarily submitted this issue to the bankruptcy court.

It was in view of such a state of facts that the bankruptcy court proceeded to hear the evidence and decide the controversy.

The bankruptcy court had jurisdiction to proceed.

 Section 2(7) of the Bankruptcy Act confers jurisdiction upon courts of bankruptcy to "cause the estates of bankrupts to be collected * * * and determine controversies in relation thereto, except as herein otherwise provided." 11 USCA, § 11(7). The general "exception" to the above broad grant of jurisdiction is contained in section 23 of the Act (11 USCA, § 46) which governs "controversies * * * between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees." Paragraph a. This section (paragraph a) provides that "the United States district courts" shall have jurisdiction over such controversies "in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants"; and (paragraph b) such shall be brought only where the bankrupt might

have done so "unless by consent of the proposed defendant" and except for the recovery of property affected by voidable preferential judgments or preferential or fraudulent transfers (sections 60b, 67e, 70e, Bankr. Act, 11 USCA §§ 96b, 107e, 110c). In the excepted instances, concurrent jurisdiction is given to "any court of bankruptcy as defined in this title, and any State court which would have had jurisdiction if bankruptcy had not intervened."

Construing these various statutory provisions as to the court wherein, and the character of proceeding (summary or plenary) whereby, the title to and rights in property adversely claimed may be adjudicated, several rules have been definitely stated: First, the bankruptcy court always has jurisdiction, as a preliminary inquiry, to determine its own jurisdiction to proceed to examine and decide, in a summary proceeding, the merits of an adverse claim; second, the bankruptcy court has jurisdiction to examine and decide adverse claims if it has possession of the disputed property. If the preliminary examination as to the existence of jurisdiction develops that such possession is present, the bankruptcy court can determine the merits in the summary proceeding before it; if such examination develops that such possession is not present, the bankruptcy court can proceed no farther, but must leave the merits to be determined in a plenary action brought in a court designated in sections 23, 60b, 67e, or 70e, of the Bankruptcy Act, as may be applicable. Taubel, etc., Co., v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770; Priest v. Weaver, 43 F. (2d) 57 (C. C. A. 8); Bee Bldg. Co. v. Daniel (C. C. A. 8) 57 F. (2d) 59.

Whether consent, under section 23b of the Bankruptcy Act, 11 USCA § 46(b), of an adverse claimant can confer jurisdiction over subject-matter upon the bankruptcy court is doubtful. Some of the authorities bearing upon the question are collected in the footnote.[2] We do not find it necessary to pass upon the question at this time.

[2] Remington on Bankruptcy (3d Ed.) §§ 2181, 2189, 2193, 2195; Collier on Bankruptcy (13th Ed.), pp. 742, 744, 745, 746; Bardes v. Bank, 178 U. S. 524, 537, 538, 20 S. Ct. 1000, 44 L. Ed. 1175; Hicks v. Knost, 178 U. S. 541, 20 S. Ct. 1006, 44 L. Ed. 1183; Bryan v. Bernheimer, 181 U. S. 188, 21 S. Ct. 557, 45 L. Ed. 814; Wall v. Cox, 181 U. S. 244, 247, 21 S. Ct. 642, 45 L. Ed. 845; Wood v. A. Wilbert's Sons Shingle & Lumber Co., 226 U. S. 384, 389, 33 S. Ct. 125, 57 L. Ed. 264; Lovell v. Newman, 227 U. S. 412, 419, 420, 426, 33 S. Ct. 375, 57 L. Ed. 577; Taubel, etc., Co. v. Fox, supra; In re Connolly (D. C.) 100 F. 620; Hinds v. Moore (C. C. A.) 134 F. 221; In re Blake, 150 F. 279, 281 (C. C. A. 8); In re Haley (C. C. A.) 158 F. 74, 78; McEldowney v. Card (C. C.) 193 F. 475, 480; Johnston v. Spencer, 195 F. 215, 219 (C. C. A. 8); In re Ballou (D. C.) 215 F. 810, 814; Tate v. Brin-

[1] The statement is made in appellees' brief, and is not denied by appellants, that since the commencement of this litigation the bankruptcy receiver has made application to the state court in Kentucky for actual possession of the property standing in the name of the Kentucky State Telephone Company, and that the state court receiver has turned over actual possession to the bankruptcy receiver.

In the instant case, the bankruptcy court examined the question whether it had jurisdiction to hear and determine the merits of interveners' controversy, and determined that it had such jurisdiction, basing its conclusion upon a finding that it was in possession of the property in dispute.

The appellants do not challenge the jurisdiction of the bankruptcy court to examine as to its own power to determine the merits of their claim; but appellants do challenge the finding that the bankruptcy court had such possession of the property in dispute as to give that court jurisdiction to proceed.

Possession by the Bankruptcy Court.

█ The actual possession of this disputed property was, when the involuntary petition was filed, in the receiver of the Kentucky court. If possession was in the bankruptcy court, it was constructive possession; and constructive possession is sufficient basis for jurisdiction in the bankruptcy court to determine rights as to such property in a summary proceeding. Collier on Bankruptcy, p. 779, and note 145; Taubel, etc., Co. v. Fox, supra; May v. Henderson, 268 U. S. 111, 115, 45 S. Ct. 456, 69 L. Ed. 870; Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645; Page v. Ark. Nat. Gas Corp., 53 F.(2d) 27, 34 (C. C. A. 8).

The question, therefore, is whether the bankruptcy court had constructive possession of this property.

█ The original proceeding in the Kentucky court, filed the day before the involuntary petition, was, as above indicated, a creditor's bill having as its purpose the marshaling of assets and debts, payment of debts, and sale of property of the Kentucky State Telephone Company. It was a liquidating or winding up proceeding of a concern unable to meet its obligations as they became due and then in default. The receiver appointed thereunder was a liquidating receiver. Such receiver, appointed within four months of the involuntary petition, holds for the bankrupt and not adversely or in opposition thereto. Bryan v. Bernheimer, supra; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413; Randolph v. Scruggs, 190 U. S. 533, 536, 23 S. Ct. 710,

ser (D. C.) 226 F. 878, 882; De Friece v. Bryant (D. C.) 232 F. 233, 236; Kaigler v. Gibson (D. C.) 264 F. 240; Operators' Piano Co. v. First Wis. Tr. Co. (C. C. A.) 283 F. 904, 906; Coyle v. Duncan, etc., Co. (D. C.) 288 F. 897, 899; Toledo, etc., Co. v. Lyons (C. C. A.) 290 F. 637, 645; Matthew v. Coppin (C. C. A.) 32 F.(2d) 100, 101; In re Federal Contracting Co. (C. C. A.) 212 F. 688, affirmed 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841.

47 L. Ed. 1165; Stellwagen v. Clum, 245 U. S. 605, 613, 38 S. Ct. 215, 62 L. Ed. 507; Galbraith v. Vallely, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823; May v. Henderson, supra; Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060.

█ The receiver appointed in the foreclosure proceeding in the Kentucky state court gained no rights as to this property because such appointment and possession came *after* the involuntary petition in bankruptcy had been filed. Isaacs v. Hobbs Tie & Timber Co., supra; Straton v. New, supra; Pugh v. Loisel (C. C. A.) 219 F. 417; State of Missouri v. Angle, 236 F. 644 (C. C. A. 8); McGonigle v. Foutch, 51 F.(2d) 455, 460 (C. C. A. 8).

Form of Proceeding.

█ But, conceding without deciding that consent could not bestow jurisdiction on the bankruptcy court, consent could authorize the form of procedure adopted by that court in determining the merits of the controversy. The form of procedure is not of vital importance; the bankruptcy court having possession. Page v. Ark. Nat. Gas Corp., supra.

█ The interveners did not ask that a plenary suit be instituted in the Western district of Missouri to determine the controversy. They simply represented to the bankruptcy court that they "should be allowed to present fully *herein* the facts in connection with the ownership of property in the conduct of business by said Kentucky State Telephone Company."

In view of the foregoing facts and circumstances, interveners could not properly complain, although summary jurisdiction was exercised in hearing the petition in intervention and entering the order of August 15, 1931.

But, although the facts and circumstances surrounding the presentation of the intervening petition and the hearing thereon were such as to amply justify the exercise of summary jurisdiction, yet the record indicates that interveners were accorded the main benefits of a plenary suit.

█ The main characteristic differences between a summary proceeding and a plenary suit are: The former is based upon petition, and proceeds without formal pleadings; the latter proceeds upon formal pleadings. In the former, the necessary parties are cited in by order to show cause; in the latter, formal summons brings in the parties other than the

plaintiff. In the former, short time notice of hearing is fixed by the court; in the latter, time for pleading and hearing is fixed by statute or by rule of court. In the former, the hearing is quite generally upon affidavits; in the latter, examination of witnesses is the usual method. In the former, the hearing is sometimes ex parte; in the latter, a full hearing is had.

It is apparent that the differences are largely procedural rather than substantive. See, generally, as to summary proceedings, Remington on Bankruptcy (3d Ed.) §§ 2399, 2400; 37 Cyc. p. 528, et seq.; In re Snelling (D. C.) 202 F. 258; In re Rockford, etc., Co. (C. C. A.) 275 F. 811, 813; as to plenary proceedings: 49 C. J., p. 1034; 3 Bouv. Law Dict. 2612; In re Rockford, etc., Co., supra; In re McMahon (C. C. A.) 147 F. 684, 687; Arellano v. Chacon, 1 N. M. 269, 276.

■ In the instant case, although formal pleadings were not filed by all the parties interested, yet the issue presented by the intervening petition was clear-cut and fully understood by the parties. There is no complaint as to this. The interveners on the one hand, and the bankruptcy receiver and the petitioning creditors on the other, presented their evidence in open court. There is no complaint by interveners that they did not have full opportunity to introduce their evidence and present their arguments to the court. Briefs were furnished after the hearing. All of the earmarks of a full and complete hearing are shown by the record. Under such circumstances, the proceeding was in substance and effect a plenary suit.

Our conclusion is that, whether the procedure taken be called summary or plenary, the court properly exercised jurisdiction, and the appellants, interveners, have no just cause to complain in that respect. Jones v. Blair (C. C. A.) 242 F. 783; In re Hollingsworth & Whitney Co. (C. C. A.) 242 F. 753, 759; In re Eilers Music House (C. C. A.) 274 F. 330, 333; In re Rockford, etc., Co., supra; Board of Trade of City of Chicago v. Johnson (C. C. A.) 283 F. 374, 380; Operators' Piano Co. v. First Wis. Tr. Co., supra; see In re Raphael (C. C. A.) 192 F. 874; Clements v. Conyers (C. C. A.) 31 F.(2d) 563; Livingston v. Becker (D. C.) 40 F.(2d) 673, 675.

### Merits of the Order Appealed From.

In its order of August 15, 1931, the trial court said that the vital question involved in the intervening petition, as admitted by both the intervening petitioner and the receiver in bankruptcy, was as follows: "Was the Kentucky State Telephone Company at the time of the institution of bankruptcy proceedings against the Municipal Telephone and Utilities Company an entirely separate and distinct entity or was it only an agency and instrumentality of the Municipal Telephone and Utilities Company?" The court decided that the Kentucky State Telephone Company was a mere agency and instrumentality of the Municipal Telephone & Utilities Company. Did the court err in so deciding? Let us examine the record.

Appellants contend that at the hearing on the interveners' petition in August, the court first assumed that the Kentucky State Telephone Company was but an agent of the alleged bankrupt, and thereby arrogated to itself jurisdiction to adjudicate that very issue.

It is true that the receiver appointed by the Kentucky, state court was one for the Kentucky State Telephone Company and not for the alleged bankrupt, the Municipal Telephone & Utilities Company; but it must be borne in mind that it was part of the bankruptcy court's record that the Kentucky State Telephone Company and the attorney for the plaintiff in the Kentucky state court suit had appeared before the bankruptcy court, and the former admitted that the Kentucky State Telephone Company was but an agent and subsidiary of the Municipal Telephone & Utilities Company; and upon this theory the receiver in bankruptcy was appointed.

There was no showing that the receiver in the Kentucky state court claimed to be holding adversely to the alleged bankrupt at the time the petition for the appointment of a receiver in bankruptcy was filed.

When the attorney for the Kentucky State Telephone Company joined in consenting to the appointment of the receiver in the bankruptcy court, it was admitted by him for that company that the proceedings in the Kentucky state court were not adverse, and the bankruptcy court accordingly had constructive possession of the property in Kentucky. That the proceedings in Kentucky were not considered to be adverse to the bankruptcy proceeding in Missouri is further shown by the fact that one of the attorneys for the plaintiff in the Kentucky suit was appointed by the bankruptcy court as attorney for the bankruptcy receiver.

These facts were not questioned at the hearing in August on the interveners' petition. The bankruptcy court, at the hearing in August, did not assume that the Kentucky

State Telephone Company was a mere agent of the alleged bankrupt, and then proceed to try out that issue. The bankruptcy court had already adjudicated that fact, and the evidence introduced at the hearing in August failed to show any ground for setting aside that adjudication.

Many of the allegations of the interveners' petition are widely at variance with the proof.

The intervening petition alleges that the principal office of the Kentucky State Telephone Company at the time of filing the intervening petition was in Dover, Del., and its operating office at all times was in Brooksville, Ky.

The stipulation of facts states that the principal place of business of the Kentucky State Telephone Company on July 1, 1930, and prior thereto, was in Chicago, Ill., and that on or about said date "all of the corporate records of that company including journals, ledger, books of account, minute books, muniments of title, and other personal property of like nature" were moved by the Municipal Telephone & Utilities Company, which company had purchased the stock of the Kentucky State Telephone Company, from Chicago to Kansas City.

The interveners' petition alleges:

" * * * That said Kentucky State Telephone Company has at all times up to at least December 31, 1930, had its own corporate books and books of account; that it employs all of its own agents, operators, linemen and other employees; that it has made its own contracts for the purchase of materials and supplies and has at all times up until the latter part of 1930 been conducted, operated, managed and controlled as a separate and distinct business and corporate entity."

The stipulation of facts states that since on or about July 1, 1930, "all of the purchases of supplies, materials, and commodities of every kind used by Kentucky State Telephone Company were purchased in the name of and paid for by Municipal Telephone and Utilities Company and shipped for use to Kentucky State Telephone Company."

The interveners' petition alleges:

"That the Kentucky State Telephone Company has authorized 5,000 shares of preferred stock of the par value of $100 per share, of which 939 shares are issued and outstanding and that a large part of said preferred stock, as your petitioners are informed and believe, and upon such information and belief represent the fact to be, is not owned nor controlled by Municipal Telephone and Utilities Company either directly or indirectly."

The stipulation of facts states:

"All but twenty-one shares of the preferred stock of Kentucky State Telephone Company outstanding are owned by Municipal Telephone and Utilities Company and the twenty-one shares are in the hands of various persons who were prior to receivership connected in some way with Kentucky State Telephone Company or Municipal Telephone and Utilities Company."

The interveners' petition alleges:

" * * * That since the acquisition by Municipal Telephone and Utilities Company of the common stock of said Kentucky State Telephone Company, said Kentucky State Telephone Company has continued to be operated and to exist as a separate and distinct corporate entity, and the property and business of said Kentucky State Telephone Company has continued to be operated as a business separate and apart from that of Municipal Telephone and Utilities Company or its other alleged subsidiaries."

The stipulation of facts states:

"All of the billing to customers of Kentucky State Telephone Company was done through the Kansas City office of Municipal Telephone and Utilities Company and the employees who did it were paid by that company; the statements to subscribers in such instance being in the name of Kentucky State Telephone Company. * * *

"As these collections were made by the local exchange in Kentucky, they were deposited in local banks that were in Kentucky in the community in which the exchange was located, in the name of Kentucky State Telephone Company; a duplicate deposit slip was sent to the office of Municipal Telephone and Utilities Company in Kansas City and as soon as the deposit slip was received there a draft was drawn against the funds which had theretofore been deposited in the Kentucky Bank and deposited in the bank account in Kansas City in the name of Municipal Telephone and Utilities Company. There was deposited in that account in Kansas City, Missouri, in the name of Municipal Telephone and Utilities Company, monies collected from North Central Telephone Company, Associated Utilities Company, Inc., Continental Telephone Company and various other subsidiaries and associated companies of Municipal Telephone and Utilities Company."

The interveners' petition alleges:

"* * * That numerous persons and individuals, resident in the State of Kentucky, were employed by said Kentucky State Telephone Company and paid by it."

The stipulation of facts states:

"The salaries of all employees of Kentucky State Telephone Company were paid by Municipal Telephone and Utilities Company through the Kansas City bank account hereinbefore mentioned and all other items in connection with the operation of said property were so paid except that the manager of the Kentucky property who was in Kentucky was given a petty cash account from which small items which were of character ordinarily required to be paid in cash were paid."

The interveners' petition alleges:

"* * * The action of said Kentucky State Telephone Company in appearing by its counsel and consenting to the entry of the order heretofore entered in the above entitled cause appointing a receiver of the property which belongs to Kentucky State Telephone Company was improper and invalid and that the court was induced to enter said order without a full presentation of the facts in issue."

This allegation was not sustained by any evidence at the hearing.

The stipulation of facts further states:

"After the date of the acquisition of said stock, the officers and directors of Kentucky State Telephone Company and Municipal Telephone and Utilities Company were the same persons and have continued to be up until this date. After said date, such officers maintained their offices continuously in Kansas City, Missouri, and also resided in Kansas City, Missouri, and all meetings of the board of directors of Kentucky State Telephone Company and of the stockholders of said company were held in Kansas City, Missouri, and all of such offices were maintained and such meetings held at the place where Municipal Telephone and Utilities Company maintained its offices."

Mr. Berger, at one time treasurer of the Municipal Telephone & Utilities Company, testified as follows:

"The subsidiary companies did not have any bank account in Kansas City. All the money went into one bank account, viz., that of Municipal Telephone and Utilities Company. The Municipal Telephone and Utilities Company paid the bills of the various subsidiary companies, that is Arkansas, Oklahoma, Missouri and Kentucky. It issued its own check in payment of the current operating expenses, pay-roll, supplies, repair parts and everything that was necessary for the operation of these properties of the various companies. All of the income of the various companies was put in one bank account and intermingled and intermixed. I had charge of the drawing of checks on this bank account. After they were authorized they were signed by myself. They were either authorized by Mr. McMahon, Mr. Cheek or Mr. Howsley. Mr. Howsley had charge of the management and control of the subsidiary companies and was in charge of operations. All of the subsidiary companies were managed and operated as one unit from Kansas City and the office in the Pioneer Trust Building."

Mr. Snyder testified as follows:

"I am a certified public accountant * * * I filed suits to have these companies and their subsidiaries placed in the hands of receivers; that is to say, suits against the Associated Utilities, Inc., Kentucky State Telephone Company, Commonwealth Public Service of Oklahoma, North Central Missouri Telephone Company, Continental Telephone Company, Gas Utilities Company. I don't say that anybody asked me to file these suits. These suits were all filed for claims that I had for work done in auditing the books. I was working actually for the subsidiaries practically all the time. All of these companies owe me in the neighborhood of $4000.00. The attorney for the company put me in touch with the lawyers who brought the suits for me. He took me over there and introduced me. To a certain extent that was a part of my plan or proposed plan of rehabilitating the companies, and getting things straightened out."

The rule in this court often announced is: "Where the court below has considered a question and made a finding on conflicting evidence, its conclusion is presumptively correct, and it should not be disturbed unless it is reasonably clear that a serious mistake has been made in the consideration of the facts or an obvious error has intervened in the application of the law." Dodge v. Norlin (C. C. A.) 133 F. 363, 371; Cleage v. Laidley, 149 F. 346, 353 (C. C. A. 8); Houchin Sales Co. v. Angert, 11 F.(2d) 115, 117 (C. C. A. 8), and cases cited; Parrish v. City Nat. Bank, 32 F.(2d) 982 (C. C. A. 8); Remington on Bankruptcy (3d Ed.) § 3871; see Quinn v. Union Nat. Bank, 32 F.(2d) 762 (C. C. A. 8).

Giving due regard to this rule in considering the foregoing evidence and other evidence of like purport, though some of it is conflicting, and bearing in mind that the rule of independent corporate identity is not a hard and fast one, and that form is not infrequently disregarded when substantial facts so require, we think the finding of the trial court that the Kentucky State Telephone Company was not an entirely separate and distinct entity, but was an agency and instrumentality of the Municipal Telephone & Utilities Company, should not be disturbed, and that the court was right in denying the prayer of the intervening petition to modify the order appointing the bankruptcy receiver in the respects specified. We think these conclusions find support in the following, among other, cases: Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commerce Ass'n., 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; Interstate Tel. Co. v. Balt. & Ohio Tel. Co. (C. C.) 51 F. 49; In re Muncie Pulp Co. (C. C. A.) 139 F. 546; In re Rieger, Kapner & Altmark (D. C.) 157 F. 609; In re Holbrook Shoe & Leather Co. (D. C.) 165 F. 973; Clere Clothing Co. v. Union Tr. & Savings Bank (C. C. A.) 224 F. 363; Baker, etc., Co. v. Hunter (C. C. A.) 238 F. 894; In re Looschen Piano Case Co. (D. C.) 261 F. 93; In re Eilers Music House (C. C. A.) 270 F. 915; Fourth Nat. Bank v. Portsmouth, etc., Corp. (C. C. A.) 284 F. 718; Wabash Ry. Co. v. American Refrig. Transit Co., 7 F.(2d) 335 (C. C. A. 8); Edward Finch Co. v. Robie, 12 F.(2d) 360 (C. C. A. 8); Costan v. Manila Electric Co. (C. C. A.) 24 F.(2d) 383; Industrial Research Corp. v. General Motors Corp. (D. C.) 29 F.(2d) 623.

We think the relationship existing between the two corporations was of such character, and the intermingling of assets so extensive, that the trial court was right in directing the bankruptcy receiver to take charge of the whole assets pending further action by the court, and that justice to all parties interested will best be done by such procedure.

It should be apparent, but it is well to call attention to the facts, that the bankruptcy court has not determined the question whether the Kentucky State Telephone Company should be adjudicated a bankrupt; has not determined that all assets standing in the name of the Kentucky State Telephone Company should be administered for the benefit of the creditors of the Municipal Telephone & Utilities Company to the exclusion of, or in priority to, the creditors of the Kentucky State Telephone Company; has not determined that the interveners, trustees under the mortgage executed by the Kentucky State Telephone Company, may not at a proper time and in a proper court foreclose said mortgage.

All of these questions, as well as others, are still open for consideration and determination by the trial court.

We think the order appealed from was right, and it is affirmed.

\*Rehearing denied June 29, 1932.